# CASES

## ARGUED AND DETERMINED

### IN THE

## CIRCUIT COURTS OF APPEALS AND DISTRICT COURTS OF THE UNITED STATES, AND COURT OF APPEALS OF THE DISTRICT OF COLUMBIA

---

**DIAMOND MATCH CO. v. SUN MATCH CORPORATION.**

(Circuit Court of Appeals, Second Circuit. December 6, 1926.)

No. 80.

1. Patents ☞328—Patent for machine for making match books held entitled to wide range of equivalents.

Patent No. 1,042,472, claims 18, 21, 22, 26, for machine for making match books, *held* of primary importance, and entitled to wide range of equivalents.

2. Patents ☞234—Noninterchangeability of parts in machine indicates noninfringement.

That parts of defendant's machine and of plaintiff's machine are not interchangeable indicates noninfringement.

3. Patents ☞178—That device is entitled to wide range of equivalents does not entitle subcombinations to similar range.

That patent for machine as a whole is entitled to wide range of equivalents does not entitle subcombinations, none of which are important, to similar range of equivalents.

4. Patents ☞237—Each member of invention composed of combination of mechanisms must be individually considered, to determine equivalency.

Where a combination of a plurality of mechanisms constitutes the invention, each mechanism is to be individually considered, to determine equivalency, though result of plural operations working conjunctively is identical in patented and accused devices.

5. Patents ☞328—Patent 1,042,472, claims 18, 21, 22, 26, for match book machine, held not infringed.

Patent No. 1,042,472, claims 18, 21, 22, 26, for machine for making match books, *held* not infringed.

Hand, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of New York.

Patent infringement suit by the Diamond Match Company against the Sun Match Corporation. From a decree dismissing the bill (9 F.[2d] 695), plaintiff appeals. Affirmed.

Suit is upon claims 18, 21, 22, and 26 of patent 1,042,472, owned by plaintiff. The invention is for a "machine for making match books," and the title, more accurately than is usual, indicates the scope and meaning of the specification.

That document declares that the invention covers a device wherein and whereby "match cards are provided with a flexible cover to inclose and protect the same," and the described scheme of operation is that "cover blanks are successively fed from a source of supply *folded at one end* and introduced to an endless carrier," which advances them to position to receive the match cards, which are severed from "strips of previously prepared stock of a length comprising several match cards. These strips are fed into the machine, and the cards as severed are *"pushed* into the opposing folded ends of covers" on the endless carrier, which transports cards and covers to a fastening mechanism, whence the now fastened and partially folded match book is carried to another mechanism, which applies the necessary "frictional igniting substance" to the folded end of the cover. This done, the subject of manufacture is passed through "an extended drying path" to a point where the cover is folded over the matches, and tucked under the originally folded flap, that was stapled to the match card and received the ignition substance. The completed match book is then ejected from the machine, at a rate and with so little human labor that the commercial success of the invention has been marked.

It is admitted that this invention reveals

a solution of the problem of producing a machine that performs automatically *all* the steps of making a match book out of flat covers and strips of match stock. These strips and covers, plus ignition, paint, and staples, are the raw material for this elaborate machine, and invention primarily resides in combining so many differently acting mechanisms in one harmoniously acting whole.

No claim of all the 59 contained in the specification covers this harmonious complete entity, though No. 56 seems to outline rather than define it. The claims in suit are admittedly for subcombinations in "a machine for making match books."

No. 26 seems most specific, and is as follows:

"In a machine for making match books, the combination, with a cover carrier, of means for supporting a match strip laterally of the path of travel of said carrier, a cutter adapted to sever the margin of a match strip transversely to produce match cards of predetermined length, means for actuating the cutter, means for moving the successively severed cards beyond the cutter and into the carrier and the covers therein, and means for moving the remainder of the strip endwise after the severance of each card therefrom to present another portion of the strip to the actions of the cutter and card moving means."

This claim covers substantially the act of supplying and applying match cards to covers. No. 18 goes a little further back and forward in the history of manufacture, and covers also and more generally the *insertion* of covers into carrier and cards *into* covers. No. 21 reads thus:

"In a machine for making match books, the combination, with a cover carrier, of means for supporting match strips laterally of the path of travel of said carrier, means for severing the margins of said strips to form match cards of predetermined length, and means for feeding such cards successively to the carrier and within the covers carried thereby."

No. 22 seems to cover the same correlated series of acts; but, instead of "feeding such cards * * * *within* the covers," it feeds "the severed cards successively *to* the covers carried by said carrier." These two claims dwell rather on the *support* of the match strips *laterally* of the advancing carrier, the severance of the strips into *cards,* than on the feed of cards to covers.

When the elements of these subcombinations and the sum of their possibilities are considered, it is observable that, for the mechanical devices defined, not only match strips

and covers, but covers folded at one end, are raw materials. For the machine of defendant, said to infringe, raw materials are covers to which the ignition paint has been already applied, match strips, and fasteners.

To a belt or link carrier, flat covers are supplied by suction from a pile placed by an operator; the cover moves forward to a position where the match card, on severance from a strip, is laid upon the flat unfolded cover; held in proper relation by a clip, card and cover progress to a device which both folds the painted end of cover over undipped end of match card and fastens them together, after which the final step is to fold the unpainted end of cover over the matches, and tuck it under the painted flap. The completed book is then ejected.

At trial no infringement was found, and bill dismissed. Plaintiff appealed.

William A. Redding and John R. Nolan, both of New York City, for appellant.

William Houston Kenyon, Edgar F. Baumgartner, and Arthur H. Serrell, all of New York City, for appellee.

Before HOUGH, HAND, and MACK, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] It may be, and we think is, admitted that in its entirety the combination of parts producing a mechanism capable of doing what this machine does is an invention of importance, and both by its commercial success and the surmounted difficulties of co-ordinate operation, deserving of that sympathetic consideration, usually expressed by granting a wide range of equivalents.

This doctrine needs no citation for its support, but neither do other and important considerations, viz. that the patent is not on a new product or composition of matter, for match books consisting of the same parts similarly fastened to each other are admittedly old; also, therefore, that any one may make match books, and the test of infringement is whether the means of fabricating the book— i. e. the machine—is that described and claimed by the patentee. And further that it cannot be and is not asserted that defendant makes match books by using that combination of elements which is plaintiff's entire described machine.

It is well to remember, when interpreting and applying a patent, that infringement can seldom be safely rested or denied upon a comparison of defendant's mechanism with the commercial embodiment of plaintiff's patent.

A closer scrutiny is usually necessary, but the comparison has its uses. In this instance it shows at once that the absence of the ignition-painting element (to use the word loosely) from defendant's device necessarily results in a totally different organization from that of plaintiff; also that plaintiff's first step, of folding the cover to make a receptacle for the *insertion* of match bottoms, necessitates a wholly different sequence of operations from that employed by defendant, who does not want any fold, crease, or receptacle, until cover and match card are to be stitched or stapled together.

Again, it is to be noted, in comparing the two machines, that the existence of plaintiff's ignition-painting element dominates and dictates the way or method of utilizing this patent. In order to apply the paint, it is necessary for plaintiff to apply the match card to the *under* side of the cover as it moves on the carrier, and so the important parts of the match book are (so to speak) carried "upside down" through the formative stages of their joint life, while defendant's cover is "right side up" throughout, because it is prepainted.

Finally, the devices of the parties are alike, in that each employs a chain or belt for purposes of carriage, each places articles thereon, and each at some stage of travel performs some act or operation upon and with what has been placed on the carrier. This method of transport has been recognized as long "generally known and used in mechanical arts." Union, etc., Co. v. Diamond, etc., Co., 162 F. 148, 89 C. C. A. 172.

Result of foregoing is that the sole inquiry in this case is whether the subcombinations, defined in the claims in suit as existing in "a machine for making match books," have been infringed by certain mechanisms in another machine organized as a whole in a quite different manner.

We have advisedly not spoken of defendant's machine as one for "making match books," because in the sense of the patent defendant cannot perform that feat. The ignition paint is essential, and that must be supplied to defendant's book from an alien source. In answering the query of the case, as last above put, it is first necessary to decide: To what art does this patent belong? Where must we look for that prior art, which both suggests and limits invention. We have no doubt that all devices for mechanically wrapping any article with any protective or confining wrapper are relevant and may be important.

We find that art on this record full and suggestive. It was not new per se to wrap or cover any article as matches are covered in the so-called "book," while stapling card and cover together by machine is not asserted to possess novelty.

Having assigned the patent to its class, the second step is to read the claims on defendant's device, having ascertained the meaning of the claims by reference to the specification. Here we note that every claim must be read as defining a subcombination in such a machine as is described.

[2] Passing the point that defendant's machine will not make match books in plaintiff's sense, and treating it as a machine for *completing* such books; can the combinations of the claims or their equivalents be found in defendant? We think not, because, first, there is not even an asserted or suggested interchangeability of parts between the mechanisms, and this indicates noninfringement (Miller v. Eagle, etc., Co., 151 U. S. 186, 14 S. Ct. 310, 38 L. Ed. 121); secondly, the elements of plaintiff's combination are not found in defendant.

The eighteenth, twenty-first, and twenty-sixth claims in terms require the match cards "inserted" or fed "within," or moved "into the carrier and the covers therein," and these words cannot be satisfied by placing a card in a cover under a wholly independent clip that is part of the machine, and not under a prefolded part of the cover itself.

[3] The twenty-second claim speaks of "feeding the severed cards successively *to* the covers"; words which must refer to the kind of covers existing when the feeding occurs, and the only kind plaintiff can use at that time must be folded, for the "insertion," which is the central thought of plaintiff's "upside down" traverse of card and cover. We have said that the whole machine of the patent is a device of such successful importance as to merit a wide range of equivalents, but that does not extend to subcombinations, which do not, any one of them, show such importance.

[4] Yet every equivalent, whether asserted in respect of a small or great invention, must respond to the rule enunciated in Morley v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715, viz. that where a combination of a plurality of mechanisms constitutes the invention, each mechanism is to be individually considered to determine equivalency, though the result of the plural operations working conjunctively is identical in the patented and accused devices.

[5] This rule is fatal to plaintiff, and we agree with the court below that there is no infringement.

Decree affirmed, with costs.

HAND, Circuit Judge (dissenting). My brothers think, as I understand them, that there can be no machine for making match books unless it makes a complete match book, including the ignition paint. That appears to me unnecessarily verbal, when we have to do with an invention of genuine value. It seems to me especially verbal when we are considering, as in claims 21, 22, and 26, not the whole machine, but a minor part of it. Why the defendant should be allowed to escape after taking the whole of a subcombination, because he does not take the whole of the whole combination, I cannot see. The invention is the same, as respects the ingenuity necessary to discover it and its value when discovered, whether the defendant painted the books as a last stage, or painted them before he put them into his machine. His machine, at least in colloquial speech, seems to me indubitably to make a match book.

However, I agree on other grounds as to claim 18. That is for a combination in the most general terms, composed of three elements combined with a carrier. All the elements are functionally described, and, to be valid at all, must substantially incorporate the disclosure. The defendant's machine does not incorporate the first element, substantially or in any degree; it takes off the covers toto cœlo differently from the plaintiff's. That avoids the claim.

I should not have scrupled to read "into" as equivalent to "upon" in claims 21 and 26, had it not been for claim 22; but as my brothers think otherwise, and as the patentee has himself made the distinction, I agree with them as to these claims. I dissent as to claim 22. This, like claims 21 and 26, covers only a small part of the machine; i. e., so much as moves along the uncut match strips beside the carrier, cuts off proper lengths, and feeds the cut off pieces to the covers. The plaintiff feeds them into a fold, and the defendant on top of the unfolded cover. I cannot see how this affects those parts of the machine which the claim covers; functionally and verbally the two are parallel.

As to validity the case is not so clear, but this does not seem to me the place to go into the matter at length. Page and Hopkins is the best reference, and sufficiently covers the supporting and cutting elements. It covers the feed as well, if one ignores the receiving receptacle. I think that one should not, and that the readjustments necessary to change the peripheral receptacles in Page and Hopkins' wheel into the receptacles on the carrier was beyond the compass of the every-day journeyman, had he been required, with Page and Hopkins before him, to devise this part of the machine.

In my judgment, the plaintiff should have a decree upon claim 22.