## NATIONAL ELECTRIC TICKET REGISTER CO. v. AUTOMATIC TICKET REGISTER CO.

### No. 100.

Circuit Court of Appeals, Second Circuit.
April 7, 1930.

Redding, Greeley, O'Shea & Campbell, of New York City (Rodney Bedell, of St. Louis, Mo., of counsel), for complainant-appellant.

Marshall & Hawley, of New York City (E. W. Marshall, of New York City, of counsel), for defendant-appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of Sullivan's patent, No. 1,293,974. The claims relied upon are 1, 2, 3, 5, 11, 14, 19, and 20. The invention relates to machines for issuing tickets or checks and its main object is to provide a machine that will issue tickets or checks automatically without the aid of an attendant or without necessitating the insertion of a coin in the machine.

The specification says that in lunchrooms where customers wait on themselves it is the usual practice to give each customer who enters the restaurant a check composed of a number of coupons marked with numbers that represent fractions of a dollar. These checks are subsequently punched or the coupons are torn off by the attendants from whom the customer obtains food. The early ticket issuing machines either required an attendant to control the delivery of the tickets or necessitated that a coin be introduced into the machine to effect the delivery.

The improved device of the patent in suit is so constructed that a check or ticket is always in position to be removed from the machine and the act or operation of removing one check causes the other check to be automatically forwarded into delivering position. Accordingly the machine of the patent is well adapted for use in restaurants of the kind referred to, as it overcomes the necessity of having an attendant at the entrance to hand checks to customers who enter the establishment.

The inventor states that "it is immaterial, so far as my broad idea is concerned, how the machine is constructed, so long as it will present a check or ticket in delivering position and will automatically feed another check into delivering position each time a check is removed from the machine, but I prefer to provide the machine with an electrically-operated check delivering or feeding mechanism which is so constructed that it will be rendered operative automatically by the removal from the machine of the check that was arranged in delivering position by the previous cycle of operations of said feeding mechanism. The particular construction of said feeding or delivering mechanism is immaterial and the checks can either consist of individual pieces of cardboard or other suitable material, or they can be connected together so as to form a check strip which is fed forwardly a certain distance at each cycle of operation of the machine and severed either automatically or by the operation of removing a check from the machine."

There is no doubt that the machine of the patent and the alleged infringing device of the defendant embody well-known elements, but the combination described in the patent is novel, and, in our opinion, involved inventive thought. In the patented machine the removal of the exposed check permits a washer resting on the check to drop against a plate beneath the check and thereby close a circuit for an electro-magnet which pulls the blade of the main switch in the circuit controlling the electric motor that operates the check issuing and severing parts. This enables a person, by the simple expedient of withdrawing the exposed check, to set in motion a mechanism which forwards a new check strip, severs it, and places it in position for delivery so that a new cycle of operation may begin. The convenience and advantage of the device is explained in the specification and is amply attested by the fact that the defendant, after seeing it in use, employed an inventor named Hesel to manufac-

ture a take-one-out-at-a-time restaurant machine "telling him to be careful to avoid infringing anybody else's machine." Record fol. 98.

In defendant's ticket issuing device, the removal of the exposed check permits a lever finger resting on the check to drop through a slot in the plate beneath the check, and thereby enables the other end of the lever to release a catch on another member so that a spring will pull the member and with it the blade of the main switch in the circuit controlling the electric motor which operates the check issuing and severing parts.

Defendant says that its device has no magnet, but instead employs a finger resting upon the check in delivering position which, when the check is removed from the machine, drops by gravity to release a trigger, which in turn causes the motor switch to close, that defendant's mechanical substitute for the electro-magnet device of the patent is not a permissible equivalent, and that the patent must be limited to a combination which contains the electro-magnet mechanism of Sullivan's machine.

To fortify its position, defendant argues that the patentee, after filing broad claims in the Patent Office, which were rejected on prior references, canceled them, and thereby narrowed the scope of his invention. But the claims in suit are not identical with those abandoned, and are therefore not affected by the cancellation of the latter. Auto Pneumatic Co. v. Kindler & Collins (C. C. A.) 247 F. 323; Hoe & Co. v. Goss Printing Press Co. (C. C. A.) 30 F.(2d) 271. Claims 1, 2, 14, and 20 each specifies means for cutting off the end portion of the check strip, and 3, 5, 11, and 14 specify "an electrically operated mechanism for feeding a check into delivering position" or "an electric motor for actuating" a check-feeding mechanism, whereas none of these elements was mentioned in the canceled claims.

It is further contended that the earlier Sullivan patent, No. 1,145,818, leaves little room for invention, because the patent in suit itself states that the earlier patent showed the same construction except the attachment for throwing the main switch when the check strip is withdrawn. But this addition was most important in result, for it enabled the complainant to put on the market a machine that has had a considerable commercial success and involves a novel and useful combination of elements. While the defendant has an automatic control that is mechanical rather than electrical, and while the rearrangement of the parts involved in this mechanical control is ingenious, Sullivan's application of an automatic control to his earlier mechanism was such an important step in securing a labor saving device that the claims of the patent in suit should receive a liberal interpretation. Sullivan's prime addition to the existing art was a device "so constructed that a check or ticket is always in position to be withdrawn from the machine and the act or operation of removing one check causes another check to be automatically moved into delivering position." Patent, p. 1, 11.48–53. In view of his further statement in the specification that "it is immaterial so far as my broad idea is concerned, how the machine is constructed, so long as it will present a check or ticket in delivering position and will automatically feed another check into delivering position each time a check is removed from the machine * * *" (11.81 to 88), it seems reasonable to hold that his claims should not be treated narrowly. Otherwise a useful invention may be avoided by relatively simple changes.

It is true that various patents are cited, particularly United States patent No. 1,161,-850 to A. F. Dixon, where electric circuits have been controlled by strips of paper and other insulating material, but in none have the features disclosed in the patent in suit been shown. Dixon does not show a strip which may be grasped by a customer. While the patents to Dixon, Small, and Bullough all show different ways of interrupting an electric circuit, they are none of them in the ticket machine art, none of them embodies the same combination as the patent in suit, and none of them has an element in which a manual removal of a strip controls the circuit.

We are inclined to think that claims 3 and 14 definitely require the magnet circuit illustrated in the patent and 19 and 20 the reciprocating movement which the defendant's machine does not have, but claims 1, 2, 5, and 11 appear to be infringed.

The decree is reversed, and an interlocutory decree is granted for complainant holding the claims in issue valid, and claims 1, 2, 5, and 11 infringed.