## GENERAL REGISTER CORPORATION v. LOCK–STUB CHECK CO.

### No. 5461.

District Court, E. D. New York.
Feb. 23, 1932.

E. W. Marshall, of New York City (Frank S. Busser and George J. Harding, both of Philadelphia, Pa., of counsel), for plaintiff.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon and Douglas H. Kenyon, both of New York City, of counsel), for defendant.

GALSTON, District Judge.

This is a patent infringement suit in which infringement of letters patent No. 1,-293,974, granted to William L. Sullivan on February 11, 1919, is alleged. The patent is for a check-issuing machine, and claims Nos. 1, 2, 3, 4, 5, 11, 12, and 19 are in issue.

The patent was adjudicated in National Electric Ticket Register Co. v. Automatic Ticket Register Co., 40 F.(2d) 458, 459; the Circuit Court of Appeals holding claims 1, 2, 3, 5, 11, 14, 19, and 20 valid, and claims 1, 2, 5, and 11 infringed.

On behalf of the plaintiff it is urged that the defendant's machine herein is similar in all essential respects to the infringing machine in National Electric Ticket Register Co. v. Automatic Ticket Register Co., and

that there can be no escape from a finding of infringement as to those claims and all others involved.

On the other hand, the defendant vigorously asserts that the alleged invention is invalid, but that if the claims be valid, its machine cannot fall within their scope.

In support of its position the defendant offers a new prior art, and contends that had it been presented in the earlier litigation, a different conclusion would have been reached by the Circuit Court of Appeals.

The following patents, not in evidence in the earlier case, are relied on by the defendant: Sperry, 363,694; Glass & Arnold, 428,751; Wheeler, 454,317; Watkins, 636,420; Locke, 698,406; Armstrong, 714,553; Frain, 831,851; Wightman, 902,035; Walkup, 1,135,416.

The patent relates to machines for the issuance of tickets automatically without the aid of an attendant or without necessitating the insertion of a coin in the machine, and is particularly serviceable in restaurants and lunch rooms of the cafeteria type.

The invention is said to be of an attachment to a ticket-issuing machine of the kind illustrated in United States patent No. 1,145,818 dated July 6, 1915, to the same patentee.

The early patent discloses a machine in which a continuous ticket strip is fed forwardly and severed into lengths containing one or a plurality of tickets, the length of the severed portions of the ticket strip being governed by the operator who actuates a certain key or controlling device; by virtue of the attachment of the invention of the patent in suit, the attendance of the operator is avoided, and the mere severance of the projecting coupon or ticket by the customer is the means of actuating the machine.

In the earlier litigation, the Circuit Court of Appeals said: "Sullivan's application of an automatic control to his earlier mechanism was such an important step in securing a labor saving device that the claims of the patent in suit should receive a liberal interpretation. Sullivan's prime addition to the existing art was a device 'so constructed that a check or ticket is always in position to be withdrawn from the machine and the act or operation of removing one check causes another check to be automatically moved into delivering position.'"

Of the prior art considered in that suit the court said: "It is true that various patents are cited, particularly United States patent No. 1,161,850 to A. F. Dixon, where electric circuits have been controlled by strips of paper and other insulating material, but in none have the features disclosed in the patent in suit been shown. Dixon does not show a strip which may be grasped by a customer. While the patents to Dixon, Small, and Bullough all show different ways of interrupting an electric circuit, they are none of them in the ticket machine art, none of them embodies the same combination as the patent in suit, and none of them has an element in which a manual removal of a strip controls the circuit."

I think the problem presented for solution by the defendant here, in view of the prior litigation, is whether any of the new prior art, when considered with the early Sullivan machine, warrants the conclusion that the patent in suit is void for want of invention; I do not understand that invalidity is predicated on any anticipatory patent.

Patent No. 831,851, to Frain, seems to me the most important of the patents cited. It has for its object a machine for delivering cards or other articles successively, and as the patent states, "particularly a machine for serving the same one by one from within the case of the machine to a position in which the said articles are visible or may be engaged on the outside of the case." The mechanism is such that upon the removal of the card, the machine commences to offer another card in the delivering position. This is brought about by a rotary driving member, designated 10 in the patent, actuated by any suitable motor, "here illustrated as a coiled spring 20."

Comparing the construction shown in Frain with claim 1 of the patent in suit, one finds similarity in everything save the fact that claim 1 specifies a "strip" feeding mechanism, whereas the feed in Frain is of cards stacked in a trough or container.

Claim 1 reads: "1. A check or ticket-issuing machine, comprising a check strip feeding mechanism, a cutting mechanism for severing the end portion of said strip, and means whereby the act of removing the severed portion of the strip from the machine causes said strip to be fed forwardly and another section of same to be severed."

From what Judge Hough said in construing the earlier Sullivan patent in National Electric Ticket Register Co. v. Automatic Ticket Register Corp. (C. C. A.) 15 F.(2d) 257, it would seem that a claim such as this claim 1 would be infringed and, therefore, of course anticipated by a combination of

elements showing *any* check strip feeding mechanism, *any* cutting mechanism for severing the end of the strip, and *any* means whereby the act of removing the severed portion of the strip starts the machine for another operation. The difficulty presented, however, by the Frain machine is that not only is there neither strip feeding mechanism nor any cutting mechanism, but also neither is there any mechanism disclosed which would, when applied to the earlier Sullivan machine, convert it into a machine described in the specification and defined in the claim.

Patent No. 714,553 dated November 25, 1902, to Armstrong, is for an automatic card-serving machine. The figure shown in the patent is an automaton in the shape of a human figure, adapted to serve or hand out advertising cards, circulars, and the like. The specification states: "As one card has been withdrawn from the automaton, mechanism will be put into operation for causing the swinging arm and hand to grasp and serve another card for delivery." The device and its operation are subject to the same infirmities as were indicated in the consideration of the Frain patent, for here there is neither a strip-feeding nor cutting device. To combine the Armstrong mechanism with the earlier Sullivan machine and get the combination of the patent in suit seems to involve something more than the mechanical skill of the art.

Patent No. 363,694 to Sperry, dated May 24, 1887, is for a toilet paper holder. The act of withdrawing one sheet from a package of separate sheets by pulling it, serves as a means of presenting or feeding the next sheet for use. The act of removing one sheet causes a roller to move another sheet into position. The mechanism of the patent is wholly different from that of the patent in suit; and neither in terms nor substance can the disclosure be read on claim 1 of the patent in suit.

Patent No. 454,317 to Wheeler, dated June 16, 1891, is for a tiolet paper fixture. It may be said at·once that this is a mechanical device. It has no switches. The operation of pulling out one sheet brings another into position. It may be noted that the operator not only advances the strip but also furnishes the power to cut or sever it. The operation is described in the patent as follows: "The end of one of the webs of the paper of the duplex rolls is always in advance of the other. On pulling it, it is brought to a point where it is cut off by one of the cutting cylinders. This operation at same time advances the end of the other web, so that when such first one is cut off the other is in the same position, in order to be readily grasped by the hand and be pulled until it is also cut off, which at same time advances the end of the first-mentioned web of paper, and so on until all the paper is consumed." The Wheeler patent does not disclose means whereby the act of removing the severed portion of the strip from the machine causes *said* strip to be fed forwardly and another section of *same* to be severed.

Patent No. 698,406 to Locke, dated April 22, 1902, is for a match safe. While of course the patent is in a totally nonanalogous art, a mechanism is disclosed in which the matches are automatically presented one at a time in a position to be withdrawn from a container. The patent seems to me to be rather remote from the Sullivan mechanism and does not conform to the elements of the claim under discussion.

Finally there are three patents, No. 428,-751 dated May 27, 1890, to Glass and Arnold, ·for a coin-actuating attachment for phonographs; No. 636,420 dated November 7, 1899, to Watkins, for a coin-controlled mechanism; and No. 902,035 dated October 27, 1908 to Wightman, for an electric railroad switch—which are relied upon by the defendant to show a common practice in the electrical field as to the use of two switches, such as are described in the patent in suit, to control an electric motor.

I do not believe that in any of the foregoing patents, considered either singly or in combination, is there mechanism or means disclosed which when considered with the early Sullivan patent warrants the finding of lack of invention. Moreover, there is nothing in the opinion of the Circuit Court of Appeals to justify me in believing that had these patents been presented, a different conclusion on the question of invention would have been reached.

A similar conclusion follows as to the validity of claim 2. It includes, in addition to the combination of claim 1, means for holding the check.

Claim 3 does not include a strip-feeding mechanism nor strip-cutting mechanism. This claim was construed by the Circuit Court of Appeals so as to avoid its literal interpretation and as definitely requiring the magnet circuit illustrated in the patent. Under such a narrowed interpretation this claim is not infringed by the defendant's device; and accordingly it is not necessary to discuss the validity of the claim.

Claim 4 was not involved in the former case. This claim is very similar to claim 3 but somewhat narrower, in that it adds as a final element detailed characterization of the switch governed by the check. If claim 3 is to be limited to the magnet circuit illustrated in the patent, then I believe claim 4 should be similarly limited, and for that reason is not infringed.

In view of the fact that claim 5 was held to be valid and infringed by the defendant's construction in the former suit, it would appear that the court did not limit the claim to the magnet circuit illustrated in the patent. The new prior art cited and discussed herein does not invalidate the claim.

Claim 11 refers to a check-feeding mechanism and is not limited to a check strip-feeding mechanism, but nevertheless, though such breadth of claim would seem to invite the Frain and Armstrong patents as pertinent prior art, neither patent is an anticipation of the claim. The claim was held valid in the earlier case, and despite the showing of Frain and Armstrong with that of Glass & Arnold and Watkins and the 1915 Sullivan patent, I am of opinion that it required inventive skill to work out the combination of the claim.

Claim 12 was not involved in the early case. It is, however, narrower than claim 11, in designating the strip-feeding mechanism instead of a check-feeding mechanism, and in designating a switch controlled by the check instead of "means" controlled by the check. If the broader claim is valid, certainly the narrower claim must be.

The defendant urges that claims 11 and 12 cannot be taken literally but must be limited by construction to the actual invention made by Sullivan in applying the Frain starter to the 1915 machine. That contention involves the scope of the claim rather than its validity, and will be dealt with hereinafter in connection with the question of infringement.

The validity of claim 19 is attacked on the ground of lack of invention and for substantial anticipation by Frain. Frain, however, does not anticipate for the reasons heretofore stated; nor does there appear to be lack of invention.

We now approach the question of infringement.

The defendant presents an interesting comparison of its machine with the machine of the patent in suit, and emphasizes differences in construction and operation. Among them may be stated to be provision in the patent for an alternative method of starting the machine either by pressing manually the button 20b or by the removal of the proffered ticket. In the defendant's machine no such alternative arrangement is employed. Secondly, the means employed to initiate the operation of the machine of the patent include a metal plate (101), arranged on the under side of the proffered ticket, and a plurality of washers (102), arranged on the upper side of said ticket, mounted on a metal shaft 103; whereas, in the defendant's machine, the proffered ticket, it is said, serves as a mechanical stop. In the defendant's machine there are no parts corresponding to the magnet 106 or 106a or their co-operating parts. Certain distinctions are drawn also by the defendant in respect to its use of double switches, as compared with the switches of the patent in suit, and differences also are pointed out in respect to the feeding and severing mechanisms of the two structures.

Mr. Bentley, the defendant's expert, said that while the defendant's machine has two circuit closures, they are for an entirely different purpose from the two circuit closures of the patent in suit. Referring to defendant's Exhibit J, which illustrates the defendant's machine, he said that the main circuit closure was that started by closing contacts 12, and that merely as an emergency the second closure, the contacts 13, are provided.

In the patent in suit the electric motor that operates the machine is governed by the opening or closure of the contacts 71 and 72 as the main switch; a preliminary switch is also shown, the operation of which is governed by the insulating ticket X'. The function of the preliminary switch is to energize the magnets 106 or 106a and also to close the motor circuit and to start the motor operating. By doing both of these things, the main switch is closed, and the motor, therefore, continues to operate despite the opening of the preliminary switch, until contacts 71 and 72 are broken.

The defendant claims that it has adopted the Frain starter idea of an electrically operated, strip-feeding, cutting, and ticket-issuing mechanism, and that its way is substantially different from Sullivan's; and that, therefore, the subcombination in the defendant's machine that starts its operation by withdrawal of the issued ticket does not perform the same function in substantially the same way as the corresponding subcombination in the machine of the patent; and, fur-

ther, that the subcombination in the defendant's machine for stopping the motor at the end of the cycle of operations does not perform the same function in substantially the same way as in the corresponding subcombination in the machine of the patent.

Despite these differences, certainly in terms claims 1, 2, 5, 11, 12, and 19 may be read upon the defendant's structure. However, the defendant contends that these claims in the light of the prior art must be so narrowly construed as to free it from the charge of infringement; and it relies particularly on Diamond Match Co. v. Sun Match Corporation (D. C.) 9 F.(2d) 695, 699, affirmed (C. C. A.) 16 F.(2d) 1, 3. On the appeal, it was said by Judge Hough:

"We have said that the whole machine of the patent is a device of such successful importance as to merit a wide range of equivalents, but that does not extend to subcombinations, which do not, any one of them, show such importance.

"Yet every equivalent, whether asserted in respect of a small or great invention, must respond to the rule enunciated in Morley [Sewing Mach. Co.] v. Lancaster, 129 U. S. 263, 9 S. Ct. 299, 32 L. Ed. 715, viz. that where a combination of a plurality of mechanisms constitutes the invention,' each mechanism is to be individually considered to determine equivalency, though the result of the plural operations working conjunctively is identical in the patented and accused devices."

It must be noted though that the claims considered by the court in Diamond Match Co. v. Sun Match Corporation were themselves subcombination claims. As Judge Campbell said in the District Court: "It therefore seems to me that the problem which confronted Paridon and Palmer, and which they successfully solved, was not the invention of the subcombinations of the claims of the patent in suit, upon which this action is based, but was the accomplishing in one automatic machine of every operation to make a complete match book, including the painting with ignition paint, and this furnishes a useful guide in understanding the patent in suit, and a controlling guide in construing its claims. Steinau Co. v. Common Sense Novelty Co. (C. C. A.) 3 F.(2d) 144; Godwin Co. v. International Steel Tie Co. (C. C. A.) 2 F.(2d) 198; Continental Paper Bag Co. v. Eastern Paper Co., 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122."

Thus the claims construed by the court in the Match Case were not for a machine, but for a subcombination of the machine. That is not the situation in the case before us. Judge Campbell said:

"The inventions of the claims in issue, however, if the same are not limited by the words 'in a machine for making match books,' are not primary inventions, for the functions of the subcombinations of those claims were old, and those subcombinations were merely improvements adapting the machine as a whole to perform the entire function of completely making a match book in one machine. Westinghouse v. Boyden Power-Brake Co., 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136. * * *

"The machine of the patent in suit is a double one; the defendant's machine is a single one."

And Judge Hough wrote of the claims: "Here we note that every claim must be read as defining a subcombination in such a machine as is described."

The difficulty with the defendant's position in the case at bar is that the claims in suit are not subcombination claims, but set forth the combinations of elements constituting the machine itself.

Moreover, and in the final analysis, the Circuit Court of Appeals in finding infringement in National Electric Ticket Register v. Automatic Ticket Register Corp., said: "While the defendant has an automatic control that is mechanical rather than electrical, and while the rearrangement of the parts involved in this mechanical control is ingenious, Sullivan's application of an automatic control to his earlier mechanism was such an important step in securing a labor saving device that the claims of the patent in suit should receive a liberal interpretation. Sullivan's prime addition to the existing art was a device 'so constructed that a check or ticket is always in position to be withdrawn from the machine and the act or operation of removing one check causes another check to be automatically moved into delivering position.' Patent, p. 1, 11.48—53. In view of his further statement in the specification that 'it is immaterial so far as my broad idea is concerned, how the machine is constructed, so long as it will present a check or ticket in delivering position and will automatically feed another check into delivering position each time a check is removed from the machine * * *' (11.81 to 88), it seems reasonable to hold that his claims should not be treated narrowly. Otherwise a useful invention may be avoided by relatively simple changes."

This court is asked, largely because of the Frain patent and the additional electric double-switch art adduced, to hold that had that same art been presented in the earlier case, the claims there considered would not have been given a broad construction.

I do not think the new art compels that conclusion, and since infringement was held therein of claims 1, 2, 5, and 11 by a machine which did not include the magnet circuit illustrated in the patent, I see no compelling reason now for reading claims 1, 2, 5, 11, 12, and 19 as including that circuit. Hence I believe that those claims are infringed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.