### GENERAL REGISTER CORPORATION v. LOCK–STUB CHECK CO.
### No. 299.

Circuit Court of Appeals, Second Circuit.
March 20, 1933.

Kenyon & Kenyon, of New York City (Wm. Houston Kenyon and Douglas H. Ken-

yon, both of New York City, of counsel), for appellant.

E. W. Marshall, of New York City (Frank S. Busser and George J. Harding, both of Philadelphia, Pa., of counsel), for appellee.

.Before MANTON, SWAN, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This is a suit for infringement of patent No. 1,293,974, and claims 1, 2, 5, 11, 12, and 19 were held valid and infringed. We sustained the patent in National Electric Ticket Register Co. v. Automatic Ticket Register Co., 40 F.(2d) 458. The patent adds an attachment to the ticket proffering machine of the patentee's earlier patent No. 1,145,-818. In the prior patent the machine was started by a push button. In this patent, by virtue of the attachment, the machine is started by the removal of the proffered ticket. The ticket proffering machine itself is identical in both of the inventor's patents.

We held in National Electric Ticket Register Co. v. Automatic Ticket Register Co., 40 F.(2d) 458, 459, that there was novelty and invention in starting the machine by the act of removing the proffered ticket. We said the prior art, there disclosed, failed to show means to carry out this idea. On that record we regarded the invention as entitled to a liberal interpretation and held the defendant an infringer who had an automatic control that was mechanical rather than electrical even though the mechanical control was regarded as ingenious. This we based upon the step as a labor saving device. We said: "In view of his [Sullivan's] further statement in the specification that 'it is immaterial so far as my broad idea is concerned, how the machine is constructed, so long as it will present a check or ticket in delivering position and will automatically feed another check into delivering position each time a check is removed from the machine' * * * it seems reasonable to hold that his claims should not be treated narrowly. Otherwise a useful invention may be avoided by relatively simple changes."

As to the prior patents, we said: " * * * But in none have the features disclosed in the patent in suit been shown. * * * None of them has an element in which a manual removal of a strip controls the circuit."

In the court below, new prior art was received, a patent to Frain, No. 831,851, and

to Armstrong, No. 714,553. The patent in suit was based on the idea that it is the first for the construction of a machine providing "that a check or ticket is always in position to be removed from the machine and the act or operation of removing one check causes another check to be automatically moved into delivering position." In view of the disclosure of these two prior patents, to which we refer, we think the inventor by this invention is an improver only of ticket selling devices. The claims sued on all have one element alike, means for causing the removal of the ticket to start the cycle of operation of the machine. They differ in their elements. In Sullivan's earlier patent there were the strip feeding mechanism, its cutting or severing mechanism (claims 1, 2, and 12 of the patent in suit), its electrical operation (claim 5 of the patent in suit), its electric drive (claims 11 and 12 of the patent in suit), its driving mechanism, driving positively the various elements of the machine both forwardly and backwardly (claim 19 of the patent in suit).

The appellant's machine feeds a strip and severs it, is driven by an electric motor, and is stopped automatically by the working of a switch. Its means for causing the removal of the proffered ticket to start this cycle of operation is different from that of the patent in suit unless we may sustain the claims as broadly as was done heretofore. Sullivan's is a strip feeding mechanism as compared with a ticket feeding mechanism which Frain and Armstrong presented, a well-known difference in a ticket proffering machine, and requires the addition of a severing mechanism, operating in proper sequence with the feeding mechanism. But it was no different whether the combined feeding and severing mechanism started by the push button (Sullivan's patent 1915) or by removal of the issued check or ticket (patent in suit). No adoption of the severing mechanism to the new starter idea is shown. The machine of the 1915 patent was a strip feeding and severing machine, but what the attachment of the patent in suit adds to it to start it was equally applicable to a machine proffering tickets which had been previously severed. The Frain patent, No. 831,851, shows what the patent in suit says is novel, namely, a machine "so constructed that a check is always in position to be removed and at such times all parts of the machine are at rest. The act of removing the check, however, starts the machine operating and causes another check to be fed automatically into delivering position, the machine coming to

rest automatically after the cycle of operations has been completed."

In Frain, Figs. 1 and 2 of the drawings disclose a machine for proffering a series of cards or tickets one after the other so that upon the removal of the proffered card or ticket the machine commences its cycle of operation to proffer another card or ticket and then automatically stops itself. The machine is operated by a shaft which is driven by a spring motor. The card proffered to the customer is in a proffering position; the remaining cards in the machine are stacked in a trough or container and are forced forward in the machine by a weight working a follower behind the stack of cards. The cards are removed from the trough and carried to the proffered position by means of a vertical reciprocating carrier. This carrier is reciprocated positively both upward and downward by the spring motor that is connected with the shaft. This is accomplished through a rack located on the back of the carrier and a series of intermeshing gears, pinions, and segments which transmit a reciprocating motion to the rack from the revolution of the shaft. The paper used in the patent in suit, as in Frain, must be thick enough to hold apart the elements whose coming together precipitates the action.

Armstrong patent, No. 714,553, shows what the patent in suit states its novelty to be, that is, a machine "so constructed that a check or ticket is always in position to be removed from the machine and the act or operation of removing one check causes another check to be automatically moved into delivering position."

The object of the Armstrong invention is to "provide effective and easily-operating mechanism concealed within the body of a human figure for automatically taking a card from a feeding device and handing it out by a swinging motion of the arm and hand to a bystander, whereby, as soon as one card has been withdrawn from the automaton, mechanism will be put into operation for causing the swinging arm and hand to grasp and serve another card for delivery."

We must have due regard for these patents in considering the claims of infringement made against the appellant. A reconsideration of the claims and the range of equivalents, in addition to the considerations heretofore announced by us, is necessary. An improver only upon a prior machine which is capable of accomplishing the general result must expect his claims to receive a narrow interpretation. Morley Sewing

Mach. Co. v. Lancaster, 129 U. S. 263, 273, 9 S. Ct. 299, 32 L. Ed. 715; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U. S. 405, 415, 28 S. Ct. 748, 52 L. Ed. 1122. In our previous decision, we narrowly construed claim 3 as requiring a magnetic circuit illustrated in the patent, and held there was no infringement. So in claim 5, "means governed by the check that is in dealing position for controlling the circuit that energizes said mechanism" does not describe appellant's machine. In the patent in suit, the "means" is a switch which controls the circuit as connected to the switch members and traced from one plate or terminal of the supply circuit through the switch and back to the other plate or terminal. This circuit energizes the "mechanism" through and by means of the electromagnetic action of the magnet upon its armature and the consequent motion of that armature. It is that motion which operates the push button and starts the machine. The operation requires a switch in the circuit that is to be governed by the check and something in that circuit to do the work there when the switch is closed.

■ For a circuit to energize requires some device to do the work. The magnet is the energizing or translating device. This the appellant does not have in its machine; neither circuit energizes anything. Claim 5 would improve Frain's invention only by substituting the electrical operation with its recognized incidents of electrical control for mechanical operation with its incidents of mechanical control. This would not amount to invention with the knowledge of both arts at the time Sullivan conceived his inventive thought. The appellant's machine lacks a circuit that energizes and a mechanism that feeds the check. It achieves its result by a different combination which operates in a different way and does not infringe claim 5.

Claim 19 states that the motor operating driving element "positively moves the various elements of the machine forwardly to cause the machine to operate and also backwardly to restore said elements to starting position. * * *" In appellant's machine the knife that severs the ticket is moved forward to do its cutting work by a spring. Claim 19 includes the strip feeding mechanism and so necessarily includes the cutting mechanism. There is no infringement here.

■ Claims 1, 2, 11, and 12 are not infringed. If upheld as valid, they cannot be so broadly construed as to cover and include the appellant's machine. They are not infringed because the part of appellant's machine that operates the machine by the removal of the ticket is not the equivalent of that part or element of the machine of the patent which does that work. Westinghouse v. Boyden Power Brake Co., 170 U. S. 537, 568, 18 S. Ct. 707, 42 L. Ed. 1136; Diamond Match Co. v. Sun Match Corp., 16 F.(2d) 1, 3 (C. C. A. 2). In the latter case, it was said that, "where a combination of a plurality of mechanisms constitutes the invention, each mechanism is to be individually considered to determine equivalency, though the result of the plural operations working conjunctively is identical in the patented and accused devices."

These claims are for a combination of a plurality of mechanisms—cutting, starting, and stopping mechanisms—and the mechanism of the appellant's machine which starts its operation by withdrawal of the issued ticket does not perform the same function in substantially the same way as the starting mechanism of the machine in the patent in suit. Nor does the mechanism in the appellant's machine for stopping the motor at the end of the cycle of operation perform the same function in substantially the same way as the stopping mechanism of the patent in suit. While the two are alike in that the removal of tickets starts the cycle of operations, still that was what Frain taught, and, while they are alike in that the machine is started by the closing of a switch and stopped by the opening of the switch, that is so because the motor was an electric motor and that is the one way an electric motor can be started or stopped, and, while they are alike in that the electric motor control of them both for starting and stopping is achieved by two switches in parallel circuits, the closing of one starting the motor and the opening of the other stopping it, but this illustrates the common electric motor practice in machines having an automatic cycle of operation. In other respects we think appellant's way of applying the Frain starter idea to an electrically operated strip feeding and cutting and ticket issuing mechanism is substantially different from the patent in suit, including the fact that in appellant's machine, the removal of the ticket releases a spring pressed part which acts purely mechanically as in Frain to initiate the operation.

Frain showed the way to start the ticket issuing mechanism by removing the ticket and showed how to do it in a mechanically operated ticket feeding machine. Sullivan started his electrically operated strip feeding 1915 machine by pushing down a button.

His problem was to connect up his proffered ticket and push button so that the removal of the ticket would push the button down. Sullivan accomplished this after the idea occurred to him to utilize the insulating properties of the issued ticket as a means of holding apart the spring or gravity pressed contacts of an electric switch in series with the main motor so that the removal of the ticket would close the circuit and to utilize by a magnet the current so obtained to do the work of the push button. This work on the push button was an improvement which attached the push button temporarily to the motor-driven mechanism so that the power of the main motor pushed the button down. Appellant did not have the push button device, and it neither utilized the insulating properties of an issued ticket to hold the spring or gravity pressed contacts of an electric switch apart, nor did it utilize the current so obtained to do any work outside of the main motor itself, and it did not utilize a magnet in a branch circuit to start its machine by pushing down the push button. Appellant's way of starting its machine is not Sullivan's but that which Frain taught. For these reasons the appellee has failed to establish infringement of the claims of the patent in suit.

Decree reversed.