30 C.C.P.A. (Patents)

### In re LISTEN.
### Patent Appeals No. 4744.

Court of Customs and Patent Appeals.
June 10, 1943.

Carl C. Batz, of Chicago, Ill. (Frederick H. Untiedt, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel) for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1, 3, 4, 7, 9, and 10) in appellant's application for a patent for an alleged invention relating to a "cheese-meat loaf" and to a method of preparing the same.

Claims 1, 3, 4, and 9 are method claims, of which claims 1 and 3 are illustrative, and claims 7 and 10 are product claims, of which claim 7 is illustrative. We quote claims 1, 3, and 7:

"1. In a method of preparing a cheese-meat loaf, the steps of surrounding a block of cheese with uncooked meat, heating the loaf to give it a firm texture, and then chilling it to produced a cooked meat loaf integrated with the cheese.

"3. In a method of preparing a cheese-meat loaf, the steps of surrounding a block of cheese with uncooked meat, chilling the same, heating the loaf at a temperature above 138° F. to make it firm, and then chilling the loaf.

"7. A cheese-meat loaf comprising a meat loaf having a firm cooked exterior with cheese inserts sealed within the loaf and integrated with the meat."

The references are: Kuhner, 1,956,239, April 24, 1934; Parsons, 1,993,621, March 5, 1935.

Claim 3 differs from the other method claims in that it includes the step of chilling the loaf of cheese and uncooked meat before cooking the same.

Appellant states in his application that one of the objects of his alleged invention is to provide a method whereby cold cheese and cold, uncooked, ground meat can be brought together and then cooked to produce a firm integrated cheese-meat loaf. It is further stated in appellant's application that in carrying out his process a

suitable mold is "lined with a paper liner," a layer of cold ground meat is placed within the paper liner, one or more suitable blocks of cheese are placed upon the meat, and then a layer of cold ground meat is placed over the cheese and so packed as to enclose the cheese within the meat; that the mold is then placed in an oven or tank and the cheese-meat loaf cooked; that by the cooking operation and the arrangement of his cheese-meat loaf the "meat becomes firm and holds the cheese within the clearly defined shape which it originally occupied"; that, although the temperatures to which the loaf is subjected are not very high, they "are sufficient to integrate the cheese with the firm meat so that later the finished loaf may be sliced with the cheese adhering to the meat"; that after the loaf is cooked, it is chilled in the mold; and that the loaf is then removed from the mold, the paper liner removed therefrom, and the loaf cleansed of any gelatin or grease solution, after which it is "encased within a natural or artificial casing and is ready for sale."

The patent to Kuhner relates to a method of making a meat-cheese loaf, and discloses a loaf comprising two outer layers of meat and an inner layer of cheese arranged in the form of a sandwich. In the patentee's method, a sheet of light textile fabric, such as muslin, is placed in the interior of a mold, the textile fabric is then covered, as stated by the patentee, with "caul (preferably the veil of fat from slaughtered animals)," the patentee then deposits a layer of meat composition, then a layer of cheese, the surfaces of which have been treated with gelatin to render them adhesive, and then another layer of meat. The extended portions of the caul and the textile fabric not covered by the meat-cheese loaf are folded over the top surface of the loaf. The loaf is then compressed in a closed mold where it is subjected to a cooking process, after which it is chilled. The loaf is then removed from the mold and the textile fabric removed therefrom. In the patentee's process, although the cheese is not entirely surrounded by the meat composition, it is entirely surrounded by the caul. The patentee states in his application that "Claim is not made in this application, as to there being novelty in the use of meat portions and of cheese portions in the making of a food product, nor in processes of the preparing of the said portions separately; nor is any claim made herein as to there being novelty in the fact

that same are pressed into form, and then subjected to cooking temperature. I do wish to make it plain herein however, that in the art of making a food product whose essential parts consist of meat portions and cheese portions, I believe myself to be first to have so constituted the bar that it is of close grain, firm and uniform structure and that in the slicing of said bar, each slab, as severed, is of unitary or homogeneous structure, the cheese portion thereof being not too easily separable from the meat portions."

The patent to Parsons relates to a method of preparing a meat-cheese loaf. In the patentee's method, a mold is lined with foil, after which plastic cheese of the desired quantity is poured therein so that, as stated by the patentee, "when the body of meat is inserted into the cheese, the cheese will surround the meat body. The foil may then be folded around the cheese." The patentee states that the meat may be a solid piece properly cooked or a meat loaf composed of ground meat which "may be cooked either before or after the formation of the [meat] loaf." After the meat-cheese loaf is formed, it is heated in an oven. The patentee further states that the surfaces of the body of meat are grooved in order to provide a greater adhering surface for the cheese.

All of the appealed claims were rejected by the tribunals of the Patent Office on the patent to Kuhner, the Primary Examiner stating, in which view the Board of Appeals apparently concurred, that it did not involve invention to modify the meat-cheese loaf of Kuhner by completely surrounding the cheese with meat. The tribunals of the Patent Office further rejected the product claims (Nos. 7 and 10) on the patent to Parsons, the Primary Examiner stating, in which view the Board of Appeals concurred, that there was no invention in merely reversing the relative positions of the meat and the cheese.

It will be noted that in the patent to Parsons, the cheese entirely surrounds the meat, whereas in appellant's product and method the meat entirely surrounds the cheese.

Relative to method claim 3, which contains the limitation that the "cheese-meat loaf" is chilled before cooking, the Primary Examiner referred to a statement contained in appellant's application to the effect that if the meat is not thoroughly cured it should

be cooled for from 24 to 48 hours before it is cooked, and stated that "it is evident that this step is related to the curing of the meat. Applicant has never disclosed what is meant by 'cured' meat as used in the specification," and that such chilling step was intended to modify the meat and did not "essentially affect the process of preparing the meat-cheese loaf."

In support of the patentability of the appealed claims, it was apparently argued by counsel for appellant before the Primary Examiner, as it is argued here, that the patentee Kuhner teaches that it is necessary to use a gelatin binder in order to secure proper adhesion between the meat and the cheese, whereas, in appellant's process, a gelatin binder is unnecessary and is not used, and that the patentee Kuhner encloses his meat-cheese loaf in "caul," whereas, in appellant's process, "caul" is not used.

In reply to those arguments, the Primary Examiner stated:

"It is urged by applicant that Kuhner teaches it is necessary to use a gelatin binder in order to achieve adhesion between the meat and cheese, whereas applicant uses none. However, none of the claims as worded precludes the use of such a binder. *The omission of the binder and its attendant function is moreover not invention. If the cheese is completely surrounded by a coherent mass of meat, obviously no binder is necessary to keep the cheese in place.*

"It has been further argued that Kuhner surrounds the meat-cheese bar with fat before cooking. Again the claims do not preclude this step. Moreover, no invention is seen in omitting the fat if desired, with its function of protecting the bar. It will be noted applicant teaches that the loaf may subsequently be encased in fat." (Italics not quoted.)

It is contended here, among other things, by counsel for appellant that the patentee Kuhner does not disclose appellant's process, because the cheese contained in the patentee's meat-cheese loaf is not entirely enclosed within the meat as called for by the appealed claims; that the patentee covered the surfaces of his cheese with gelatin as an adhesive to bind the cheese and meat together; that appellant has obtained the same or even better results by eliminating the step of applying gelatin to the surfaces of the cheese; and that, therefore, his method and the product obtained thereby involve invention. In support of

that contention, counsel cites the case of Lawther v. Hamilton, 124 U.S. 1, 8 S.Ct. 342, 31 L.Ed. 325; 1888 C.D. 209. Counsel further contends that if the patentee Kuhner "were to omit his step of coating with an adhesive he would have a loaf which is not integrated and which would fall apart in marketing or in serving. Applicant's process does not call for this step, yet by the claimed method separation is prevented. This does not sound like the omission of an element along with its attendant function."

In reply to the examiner's observations in his statement to the Board of Appeals, counsel states in his brief that, although appellant discloses in his application the idea of enclosing his cheese-meat loaf in a layer of fat for the purpose of retaining "the moisture within the loaf," the patentee Kuhner discloses the use of caul which is very different from ordinary fats, and that ordinary fats "have an insulating influence and contribute far more structural support than does caul, but the point here is that in the Kuhner process it is essential to use the caul. In appellant's process it is not required."

In answer to that argument of counsel, it would seem to be sufficient to say that there is nothing in the record to indicate that the use of fat or caul served any purpose in the Kuhner process that would not be served by the use of fat in appellant's process. In either instance, the fat or caul serves to furnish some support for the loaf and to retain the moisture therein.

That the use of fat as an enclosure for meat-cheese loaves or cheese-meat loaves is optional, is clearly apparent from appellant's application. Furthermore, appellant states in his application, as hereinbefore noted, that the finished cheese-meat loaf is "encased within a natural or artifical casing and is ready for sale." Obviously the casing is intended to serve both as a support for the loaf and to retain moisture therein. We are of opinion, therefore, that the omission of the step of enclosing the meat-cheese loaf in caul, disclosed in the patent to Kuhner, is merely the omission of an element together with its intended function. Such omission does not involve invention. Richards v. Chase Elevator Co., 159 U.S. 477, 486, 16 S.Ct. 53, 40 L.Ed. 225; In re Trester, 36 F.2d 133, 17 C.C.P.A., Patents, 642; In re Morgan, 64 F.2d 991, 20 C.C.P.A., Patents, 1080.

Relative to the argument of counsel for appellant that appellant has omitted in his

process the step of applying gelatin to the surfaces of the cheese for adhesive purposes, as taught by the patentee Kuhner, it is sufficient to say that that step in the Kuhner process is not necessary in appellant's process solely because of the fact that appellant completely surrounds the cheese with meat which, of course, prevents the separation of the cheese from the meat. Furthermore, there is nothing of record to indicate that appellant's "cheese-meat loaf" is any better from an edible or other standpoint than the "meat-cheese loaf" disclosed in the patent to Kuhner.

We are of opinion, therefore, that the case of Lawther v. Hamilton, supra, wherein it was held that the omission of a step in a prior art process produced a greatly improved product and involved invention, is not applicable to the issues in the instant case, and that appellant's process and the product produced thereby do not involve invention.

The decision of the Board of Appeals is affirmed.

Affirmed.