## R. HOE & CO., Inc., et al. v. GOSS PRINTING PRESS CO. *

Circuit Court of Appeals, Second Circuit.
January 7, 1929.

No. 46.

*Mandate recalled and amended, see 31 F.(2d) 565.

James J. Kennedy and Philip B. Philipp, both of New York City, for appellants.

John D. Morgan and Alan M. Johnson, both of New York City, for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] The claims in suit are for combinations of four main elements:

The sliding swing; the balance; the locking means to draw on and secure the "drag"; the same means to push it away. Of these the most important is the first. Viewed merely as movement, Cruse discovered nothing new; his "drag" occupies the same series of positions in its course as Scott's; the whole body is translated substantially horizontally at the same time that it rotates on its own axis. It is a matter of small moment if in either case the center of gravity does not move in a strictly horizontal line. However this may effect the balance, the path of movement of each is too closely alike to be distinguished.

However, it seems to us that the phrase in the claims should be read to describe the means by which the movement is effected rather than the movement itself, and, if so, Cruse devised something new, as obviously he did. In this aspect the defendant's efforts to assimilate Scott's rocking movement to Cruse's miscarry, for it is plainly one thing to rock a box rigidly fastened to two wheels, which roll on tracks, and another to slide it upon tracks, eliminating the friction by means of wheels. Nothing turns upon the detail that these wheels rotate on axles fastened to the "drag"; the wheels might equally well have been roller bearings, unattached, but confined at the sides. If Scott stood alone in the art, we should therefore say that Cruse was a patentable improvement upon it, and that the defendant had taken something from him. But Scott does not stand alone, for we must not ignore Gally. This disclosure, though more than 30 years old in July, 1902, was in a closely allied, if not the identical, art; we cannot regard ordinary printing presses and stereotyping molds as substantially separate. It disclosed, moreover, precisely the same means as Cruse adopted to effect Scott's sliding swing, and it was not discovered during the 10 years that Cruse was in the office.

We do not forget the controversy as to whether Gally's platen carrier merely rocks, or whether it has the same motion as Cruse's "drag." We should hold, if it were necessary so to decide, that it described the same kind of path; that is to say, that the body of the carrier at once moves horizontally, or substantially so, while it rotates upon a point within itself. It may be that each point in it described the arc of a circle; but that, as we conceive it, is irrelevant. The means disclosed were adopted to effect the motion required, and were at hand. Whatever skill was required to change the form of the two converging pairs of tracks, so as to accomplish the necessary result, appears to us not beyond the range of sound mechanical skill.

The more troublesome question is whether the mere combination of Gally with Scott did not require invention, assuming that, once the idea suggested itself, the rest was simple. As is often the case, the notion of uniting two mechanical means may require more originality than its subsequent execution, and in all such cases we are without objective tests. Kirsch v. Mersereau Co., 6 F.(2d) 793 (C. C. A. 2). The only reliable evidence is from the history of the art. White v. Morton, 20 F.(2d) 311 (C. C. A. 2): how long it had to wait for the supposed invention, what efforts had been made before, how long the need had existed, how successful was the answer. When all is said, the decision must in the end at times seem arbitrary.

In the case at bar Scott appeared in May, 1901, and was a step far ahead of anything that had theretofore been devised. Cruse made his adaptation within little more than a year, during which no other efforts appear to have been made by others; this does not suggest that the change had proved difficult. Either form answered the purposes of the trade, and, though we assume that the greater sales of Cruse show that he had answered it better, he did no more than substitute an old element used for nearly the same purpose long before, for accomplishing the same result. We do not think that, with means which we are to suppose were always before him, it was invention to appropriate them as he did. Moreover, we are not faced with the presumption of validity in this respect because of the examiner's failure to find Gally as a reference; it is at least open to doubt whether, had Gally been discovered, the claims would have issued.

The other elements are easier to deal with. The balance was not new, in the only sense that that word is of importance. It is true that in Scott's "drag" the center of gravity was not always directly over the radius to which the track was tangent. Theoretically and literally, this put the "drag" as a whole out of balance; but the only important thing was that the member as a whole should be easy to move, and this is apparent from manipulation, quite independently of the declaration in the specifications. The same applies to the defendant's "drag," which is in literal equilibrium through as little of its course as Scott's; and, unless we read the words as requiring a practical equilibrium, the defendant does not incorporate this feature of the claims. Indeed, the actual embodiment of the plaintiff's "drag" is not itself in literal equilibrium throughout its whole course, as manipulation of it discloses.

The locking and clamping devices were also old as such. The claims do not contain their details as elements, except in so far as claim 26 incorporates them indirectly by providing that the devices shall withdraw the "drag" as well as bring it into contact. This last detail, so far as we can find, was a new idea, at least in this application, and, although the improvement is a small one, we see no reason why it should be denied patentability. If the defendant finds it trivial, it will be free to discontinue its use. Nor are we disposed to regard the locking features as a mere aggregation, when added to the others. Whatever that much used, if not abused, term may signify, it is apparent that the camming slots in this apparatus co-operate with the rest by throwing the "drag" away from the "cope" to a position where it may begin its rotation. Therefore we hold valid claim 26 of those now in suit.

Upon the issue of infringement we are not in agreement with the District Judge. While we think the claim is of small compass, the defendant's machine answers every element, both verbally and functionally. Nor do we see the pertinency of the cancellation of claim 15 in the office. We have repeatedly said that we will not look to the file wrapper for estoppels, except in case the patentee tries to expand his claim by omitting an element which leaves it identical with one which he has abandoned. Westinghouse Electric v. Condit Electrical Co. (C. C. A.) 194 F. 427, 430; Auto Pneumatic Co. v. Kindler & Collins (C. C. A.) 247 F. 323, 328; Spalding v. Wanamaker (C. C. A.) 256 F. 530, 533, 534.

Decree reversed. Cause remanded, with instructions to enter a decree for the plaintiff on claim 26, to dismiss the bill as to claims 1 to 6, inclusive, 11, 24, 25, and 27 for invalidity, and to dismiss as to claims 28, 29, 30, and 31, on the ground that a decree as to these would be moot, in view of the decree on claim 26.