## CELANESE CORPORATION OF AMERICA v. ESSLEY SHIRT CO., Inc.

### No. 341.

Circuit Court of Appeals, Second Circuit.

Aug. 23, 1938.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for appellant.

Kenyon & Kenyon, of New York City (Merrell E. Clark, Douglas H. Kenyon, Frederick Bachman, Cecil B. Ruskay, and Leon Lauterstein, all of New York City, of counsel), for appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Although as tried below this case involved three patents, the appeal is concerned only with claims 2 and 4 of Patent No. 1,903,960 which was granted to Camille Dreyfus on April 18, 1933, for Fabric and Sheet Material and the Manufacture Thereof. It is owned by the plaintiff and is the same patent which we have held in the case of Trubenizing Process Corporation v. Ferdinand Jacobson et al., 98 F.2d 899, in an opinion to be handed down with this one, to anticipate certain claims of the Liebowitz Patents Nos. 1,968,409 and 1,968,410. The defendant herein manufactures the fabric claimed to infringe under licenses granted under the Liebowitz patents. This appeal was consolidated for hearing with that taken by the Trubenizing Process Corporation in its suit and that record, so far as material, has been by stipulation of the parties made a part of the record on this appeal.

For a description of the accused fabric reference is made to the opinion just mentioned which also gives a general idea of the material covered by the claims of the Dreyfus Patent in suit though in respect to both some amplification and perhaps repetition will be necessary.

The application for the patent in suit was filed December 15, 1925 and followed an application for a British patent filed on January 23d of the same year. The patent was granted on April 18, 1933, after considerable controversy in the Patent Office and after review by the Board of Appeals. The usual presumption of validity is therefore entitled to great weight though, of course, it may be overcome by clear proof. See J. A. Mohr & Son v. Alliance Securities Co., 9 Cir., 14 F.2d 799.

Dreyfus disclosed "a fabric or sheet material * * * made by uniting under appropriate conditions of temperature and pressure, woven, knitted or other fabric composed of or containing filaments or fibers of thermoplastic cellulose derivative or derivatives with woven, knitted, or other fabric composed of or containing filaments or fibers of non-thermoplastic or relatively non-thermoplastic material". He suggested the use of knitted or other fabric made of yarns composed of fibers or filaments, for example, of such thermoplastic cellulose derivatives as cellulose acetate, ethyl-menthyl or benzyl-cellulose, nitro cellulose or other ester or ether of cellulose, either alone or in mixtures in association with fabric made from yarns composed in whole or in part of non-thermoplastic, or relatively non-thermoplastic material such as silk, cotton, linen, and wool, to name some of them. He said two fabrics each made to fall within one of the two classes, one having thermoplastic attributes and the other relatively non-thermoplastic, could be united "or the respective fabrics may be disposed in any desired relative number in alternation with each other". The fabrics when assembled as desired are, so he said, to be "subjected to heat and pressure, with or without employment of plasticizing or softening agents or solvents of the thermoplastic cellulose derivative or derivatives; in this way the fabrics are united together and composite sheet material is obtained in which the pores or interstices are reduced to extremely minute dimensions, or closed completely, by the melting or softening effect produced by the heat or pressure upon the filaments and fibers of the thermoplastic cellulose derivative or derivatives and by the uniting of the fabrics under the heat and pressure". He further says that the degree of impermeability of the compound fabric or material produced may be made to vary "with the degree and duration of the heat and pressure employed, and with whether plasticizers, or softeners or solvents are employed, and with the number of fabrics united together, or other circumstances".

Thus it is readily to be seen that although the invention of Dreyfus concerned, as he said, "the manufacture of new fabrics or sheet materials having waterproof to gas-proof properties or capable of other applications", the waterproof or gas-proof features, being dependent upon the degree of permeability of the finished product either by water or gas, were in fact variables. The finished product was not necessarily either waterproof or gas-proof in an absolute sense, for the moment assuming that to be possible in respect to a product in part made of textile material, but on the contrary resistant to penetration by water or gas to a greater or less degree as desired. That is made perfectly plain by his statement that "one may even, though with less advantage, employ only such mixed fabrics for making the compound material under the effect of heat and pressure, with or without application of plasticizing or softening agents or solvents, the heat and pressure causing more or less melting or softening of the thermoplastic yarns, filaments or fibers and uniting the component fabrics together to form a compound material possessing greater or less degrees of resistance to penetration by water or even gases, according to the temperature, pressure and duration of pressure or other conditions". And finally he pointed out that, "The compound materials made according to the invention may be employed more particularly for applications where resistance to penetration by water or gases is desired, for instance as waterproof materials for garments, coverings, etc., or as materials for airships or other gas containers, but materials made according to the invention may be employed for any other technical or industrial applications".

He secured two process claims and two product claims, the latter only being now in suit. They are numbers 2 and 4 and are alike with the single exception that number 2 covers a product made of a plurality of fabrics of which at least one contains yarns "comprising a thermoplastic derivative of cellulose" while in number 4 at least one of the fabrics contains yarns comprising cellulose acetate. Number 2 reads:

"2. A composite sheet material comprising a plurality of fabrics, at least one of which contains yarns comprising a thermoplastic derivative of cellulose, which fabrics have been united into a single sheet of relatively increased impermeability by the application of heat and pressure."

The qualifying phrase "of relatively increased impermeability" was required by the Patent Office before the patent would be issued. Under familiar principles the claims are no broader than such limitation permits and in the present instance no attempt is made to broaden them though there is a dispute as to infringement because it is said the accused compound materials are not of relatively increased impermeability when properly tested to determine the fact.

However that may be, on the question of validity the defendant seriously relies only upon two prior patents, one American and one British. The American patent is No. 1,538,858 granted to William G. Lindsay on May 19, 1925, for a "Fabric and Process of Making Same". He said he had discovered a new and improved way to make a more flexible variety of "celluloid" without using castor oil and disclosed how to do it to obtain a highly flexible celluloid-like substance when it was molded. It could also be rolled into sheets and by using a large amount of solvent could be liquified and brushed upon fabric or other surfaces like a varnish to make artificial leather, among other things. The composition was not only highly flexible but waterproof and non-inflammable as well as inexpensive. His drawings show textile fabric coated with it. This could be done, so Lindsay says, by the application of heat and pressure. The Lindsay Patent has so little in common with Dreyfus that discussion seems hardly necessary. Instead of two or more textile fabrics being cemented together as in Dreyfus to get the finished product Lindsay merely coated one either by flowing the liquid celluloid preparation onto one side or by pressing on a heated sheet of that material. There is no reason to believe that the compound sheet could have been relatively more impermeable than the celluloid-like sheet used as one of the units in one method of making it. Nor was it a material comprising any yarns. And when the liquid was used as a coating there was no uniting of a plurality of fabrics within any reasonable construction of the claims in suit.

The British patent was granted to William Green in 1889. It also had to do with cellulose and textile fabric but there comparison fairly ends. Green was primarily concerned with making textile fabrics, and some other materials, look like silk. And he showed how to make cellulose gelatinous and capable of being made into filaments "in a suitable state to be used in the manufacture of fabrics and for other threads". But he disclosed no compound sheet material made of what may reasonably be called "a plurality of fabrics" as that phrase is used in the claims in suit. And so neither of these patents are anticipations. We, therefore, hold the claims valid.

On the issue of infringement we agree with the defendant that only a product which is "of relatively increased impermeability" can be held to infringe. This would be so had the claims filed originally been so limited and is certainly so when they were so narrowed to meet objections during their progress through the Patent Office. Altoona Publix Theatres v. Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

The defendant used a plurality of fabrics, usually three, of which at least one contains yarns comprising a thermoplastic derivative of cellulose to make a composite sheet material for use in making shirt collars. It unites them by the application of heat and pressure. The product is admittedly not impermeable. It is designedly made so that water and air will pass through it and therein lies part of the desirability it is said to possess as a collar material. That makes the collar more comfortable and yet it remains to a marked extent free from wrinkles when worn. It is that form of Dreyfus product obtained when the starting materials are so made and arranged and the heat and pressure so applied that the composite sheet material possesses a lesser degree of impermeability as contrasted with the degree which will permit the descriptive words waterproof or gas-proof to be truthfully applied to it. The defendant makes and uses the patented product in one of its forms, provided the element of relatively increased permeability is present, selecting a form of it desirable for the particular use intended because it is less resistant to the passage of water or gas (air) than it might be made.

The only element which can possibly be lacking to make out infringement is the relatively increased impermeability of the finished product. On that point there is conflicting evidence though the conflict is not as to what the tests show so much as it concerns what tests will show the true situation. The defendant insists that speed is the important consideration and has shown that water applied to one side of its finished product under the so-called Suter test will wet through instantaneously when the water stands at a height of one centimeter but that a like application to the sheet materials when placed together ready to be pressed with heat but not yet so processed requires a slightly greater height of water to cause the same quick wetting through. A somewhat modified Suter test used by its expert Platt produced practically the same results. The reason apparently is that where the materials are closely held together after processing the spots left uncovered by the cellulose derivative afford a better passage for the water through the composite sheet of material than when there may be more space between the sheets. Likewise the so-called vapor test showed that the finished product was what might be called a quicker conductor of water vapor than the sheets were before being pressed and stuck together and doubtless for the same reason. The same is to be said of what is called the Cryer rain drop test. The defendant argues from the results of these tests that its finished product, far from having relatively increased impermeability, has in fact increased permeability. And more than that, it says that the Dreyfus claims cover only materials useful because of their impermeability and its own product is not of that character.

■ Perhaps all that need be said about the so-called "useful impermeability" is that whether the Dreyfus product in any of its forms is of "useful impermeability" depends upon the use to which it is put. The claims themselves say nothing about that but of course the statute requires any patentable product to be new and useful; yet it is self-evident that the Dreyfus product fulfills the statutory requirement of usefulness and with that the question of usefulness is about exhausted. There is no suggestion that the accused fabric is not useful. Indeed, its great virtue, as the defendant claims in its suit on the Liebowitz patents, above mentioned, lies in the

fact that it is highly useful though not, of course, because of any attribute of impermeability. While it has in fact the relatively increased impermeability of the claims in suit, it is no answer to a charge of infringement that such an attribute is unwanted in view of the intended use.

■■ As to that fact, we think the plaintiff has introduced more convincing evidence than the defendant and has therefore met the burden of proving infringement. It should be noticed that there is no mention of speed in the claims in respect to increased impermeability. The invention as a whole dealt with the quality of resistance to the passage of water or gas through the product in comparison with its passage through the unprocessed sheets and there is no fair reason to believe that relatively increased impermeability meant other than that less water or gas would go through the finished product than would go through the unprocessed materials in a given time. Of course the time element, as distinguished from mere speed of penetration, was involved as it always is in such matters for otherwise no real comparison could be made. Some constants must always be present in order to measure the variables. The plaintiff's tests showed conclusively, as might be expected, that less water and less air would pass through the defendant's finished product than under the same conditions would pass through the untreated materials used to make its product. That is one of the things Dreyfus made his invention to accomplish, as shown by his specifications, and what it did bring about as shown by the proof in this case. The reasonable construction of the phrase "relatively increased impermeability" as used in the claims can, we think, be held to mean only that. Consequently, the accused product is covered by the claims and does infringe both.

Decree reversed.

L. HAND, Circuit Judge (dissenting).

I think that the claims in suit are invalid under Green's British patent of 1889, No. 9879. Green disclosed a network of cellulose threads laid criss-cross on a fabric—among others a cotton fabric. To this he applied heat and pressure and fused the cellulose net into the subjacent cloth. If the cellulose threads had been interwoven, the disclosure would have been precisely like Dreyfus's figure one. Thus Dreyfus's

invention can rest upon nothing but weaving the cellulose threads. I do not know whether weaving such thread was known in 1889, but in 1897 Kennedy (Patent No. 590,842), disclosed a fabric with cellulose threads woven through it; it is not an anticipation, to be sure, but if there was anything in changing the criss-cross of Green into a weaving, here it was. Dreyfus's patent appeared in Canada and England in 1926 and did not produce even a ripple in the art; nobody wanted it; nobody used it; it was still-born and a failure, though it dragged its way through our patent office for over seven years. Apparently it was meant for waterproof clothing, and it was no good for that. It was only after Liebowitz in 1932 quite independently thought of using such a material for collars that it was called from limbo to dominate the whole of a new industry. The result of our two decisions completely inverts what I think right. The real benefit to the art, the genuine act of invention was to make a collar out of cellulose fabric. That Liebowitz did and he will get nothing for it. The actual fabric which he used was old, and had been sterile for over forty years; Dreyfus merely contributed what, so far as appears, was an utterly valueless detail. Yet to Dreyfus we are now to give the benefit of Liebowitz's invention, even to the extent of cutting off Liebowitz from practicing it himself. I cannot agree to such an outcome.