## INTERNATIONAL CARRIER–CALL & TELEVISION CORPORATION v. RADIO CORPORATION OF AMERICA et al.

### No. 253.

Circuit Court of Appeals, Second Circuit.

May 3, 1944.

See also 51 F.Supp. 156.

L. Stewart Gatter, of New York City (Edmund M. Squire, of New York City, of counsel), for appellant.

Stephen H. Philbin and John B. Cuningham, both of New York City, for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the plaintiff from a judgment of dismissal. The plaintiff, a New York corporation is the grantee of patent No. 2,114,718 issued April 19, 1938 upon an application filed by Sol J. Levy, the assignor, on May 23, 1936, for "two-way intercommunicating loud speaker system for power circuits." The defendants are Radio Corporation of America and its subsidiary RCA Manufacturing Company, each a Delaware corporation. Count one of the complaint charges infringement of the patent and count two unfair competition. After trial to the court the complaint was dismissed.

Although the only substantial questions raised by the appeal relate to the cause of action for patent infringement, it will be convenient to dispose first of the contention that the court erred in dismissing the count for unfair competition. At the opening of the trial plaintiff's counsel moved to defer the taking of evidence on the second count. When this was denied, he suggested withdrawal of the second cause of action without prejudice. This was also denied. Counsel then consented to a dismissal with prejudice, and the court so ordered. At the end of the trial the court again interrogated plaintiff's counsel to make sure that he understood that the dismissal was to be with prejudice. Having consented to a final dismissal of the unfair competition count, it is utterly fatuous to suppose that this part of the judgment can be reversed on appeal. Pacific R. R. v. Ketchum, 101 U.S. 289, 295, 25 L.Ed. 932; Marks v. Leo Feist, Inc., 2 Cir., 8 F.2d 460, 462.

In dismissing the cause of action for patent infringement, the district judge wrote an opinion and made findings of

fact and law. He held claims 2 and 4 of the patent, the only claims in suit, to be invalid because (1) Levy was not the inventor of the device they described, and (2) such device did not constitute a patentable invention over the prior art. Since the claims were held invalid, the court did not pass upon the question of infringement.

The claims in suit are substantially the same and it will suffice to quote claim 4:

"4. A unitary transmitting and receiving carrier frequency communication apparatus for use on electric power line circuits and other metallic transmission media comprising in combination common means for both transmission and reception, said means including a carrier frequency oscillator, means including amplifying means and a translating device for modulating said carrier frequency oscillator, means including switching means for connecting for transmission purposes the output of said oscillator to said metallic transmission media, and for connecting for reception purposes the metallic transmission media to the input of said modulating means and for switching said amplifying means and translating device into the output of said modulating means, whereby the modulated carrier frequencies received from said metallic transmission media are demodulated and reproduced in said translating device."

The apparatus depicted is a set of portable units like ordinary inter-office communication sets, but designed to "plug in" to any electric light or power circuit and use the latter for both power and transmission. Sets in use at this time required separate connecting wires between the units for transmission, e. g., the DeWald "Electro-Call" of the Glaser patent No. 2,087,027. The appellant's brief states that Levy's invention consisted in "the introduction into this Glaser combination of the radio or carrier frequency element (by means of the oscillator) and making the latter do double duty as an oscillator-detector" (by reversing the switch), and using "the line coupling means for both power and signals." We shall accept this statement of the alleged invention and proceed to a consideration of the district court's findings that Levy, the claimed inventor, "did not design" the so-called "Levy device" and that this "was really devised" by Bagno, Posner and Sadowsky.

By a letter dated January 14, 1936 (exhibit 1) Levy and his attorney Mr. Gatter made an agreement "Re Portable Intercommunicating Microphone Loud Speaker Amplifying for Power Circuit House and Office Connections." Mr. Gatter was to arrange financing and take care of legal work and preliminary expenses and Mr. Levy was "to arrange to have work done, give patents and help when required"; and they were to "go fifty-fifty on deal". Mr. Levy, whose testimony impressed the trial judge as showing only a superficial knowledge of electricity, went to Sadowsky, a radio engineer, exhibited to him a circular of the DeWald Electro-Call apparatus and asked whether he could build a device that would perform as the Electro-Call did without any wires connecting the two units. Sadowsky then sought out Bagno and Posner, who also were experienced radio engineers, and they agreed to work with him. The first pair of machines they built were demonstrated to Levy and Gatter but did not operate satisfactorily. They then made another set with a modified circuit and this was tested at Mr. Gatter's apartment and found to work successfully. The successful set was delivered to Mr. Levy, and thereafter on May 23, 1936 he filed a patent application in his own name as inventor of the apparatus constructed by Sadowsky and his associates, with whom his relations had in the meantime terminated in disagreement. In February 1937 Bagno and Posner filed a patent application which was declared in interference with Levy's application. After several delays attributable to the junior applicants, they were declared in default by the examiner and the patent was issued to the plaintiff as assignee of Levy's application.

Although the issuance of the patent affords a prima facie presumption that Levy was the original and first inventor of the device described in his application, and the burden to establish the contrary rests upon the defendants, we think their proof was ample to discharge that burden. The pair of machines delivered to Mr. Levy by Sadowsky and his associates was constructed in accordance with the lower diagram of defendants' exhibit I-1, which is a page from Bagno's notebook dated February 20, 1936 and signed by Bagno, Posner and Sadowsky with the word "Inventors" following their

names. Below their signatures as inventors appears the following:

"Read and understood by me and models of above transceivers heard by me under actual operation conditions on both A. C. and D. C. lines. Low hum, sensativity, articulation level excellent.

"Sol J. Levy"

This acknowledgment, signed by Levy and two witnesses, is fatal to his contention that the three radio engineers acted only as mechanics in his employ and that he was the inventor of the apparatus they constructed. See Barr Car Co. v. Chicago, & N. W. Ry. Co., 7 Cir., 110 F. 972, 974, certiorari denied 186 U.S. 484, 22 S.Ct. 943, 46 L.Ed. 1261; Larson v. Crowther, 8 Cir., 26 F.2d 780, 788, 789, certiorari denied 278 U.S. 648, 49 S.Ct. 83, 73 L.Ed. 560. Moreover their testimony is uncontradicted that Mr. Levy contributed no suggestions whatever as to the circuits or other electrical parts of the device; and their credibility was favorably commented upon by the trial judge. The only instruction given by Levy to Sadowsky was to build a machine that would perform like the Electro-Call device but without wires connecting the two units. This was merely telling the result he wanted and leaving to Sadowsky and his associates the discovery of the means by which it was to be attained. An employer who seeks to patent the fruits of his employees' labors must go further than merely to express a purpose to be realized. If someone had suggested to the Wright Brothers that he wished to employ them to build an aeroplane, he would not be the inventor of the machine they constructed. The applicable principle was well expressed by Justice Clifford many years ago in Agawam Woolen Company v. Jordan, 7 Wall. 583, at page 603, 19 L.Ed. 177, where he said:

"Persons employed, as much as employers, are entitled to their own independent inventions, but. where the employer has conceived the plan of an invention and is engaged in experiments to perfect it, no suggestions from an employee, not amounting to a new method or arrangement, which in itself is a complete invention, is sufficient to deprive the employer of the exclusive property in the perfected improvement. But where the suggestions go to make up a complete and perfect machine, embracing the substance of all that is embodied in the patent subsequently issued to the party to whom the suggestions were made, the patent is invalid, because the real invention or discovery belonged to another."

It is one thing for an employer to suggest improvements of a device with sufficient elaboration to enable a person skilled in the art to make a machine embodying the employer's conception; it is another to suggest merely a desired result without any disclosure of the means by which it is to be attained. Collar Co. v. Van Dusen, 23 Wall. 530, 563, 23 L.Ed. 128. The statute, 35 U.S.C.A. § 33, requires the disclosure to be full and detailed enough to enable a person skilled in the art to practice the invention. Levy's instructions to his employees were not a disclosure of that character. They were skilled in the art but they could not find the answer to the problem he posed without independent experimentation. Their first machine was a failure. It was only on the second trial, and without aid from Levy, that they succeeded. The trial court's finding that Levy was not the inventor—if invention there be—is compellingly supported by the evidence, rather than "clearly erroneous," as it must be if we are to upset it. See American Pad & Textile Co. v. Cluff Fabric Products, 2 Cir., 139 F.2d 696.

It is earnestly argued that the above-quoted headline of the Levy-Gatter agreement evidenced by exhibit 1 was an adequate disclosure of the apparatus described in the claims under discussion. Plainly it was not. It contains no indication that "carrier frequency" rather than audio frequency operation was demanded; nor does it speak of the oscillator, a translating device for modulating the oscillator, or switching means so as to use the same parts for both transmitting and receiving— all of which are called for by the claims.

Since the finding that Levy was not the inventor must be sustained we have no need to consider whether the device was a patentable advance beyond the prior art or whether, if it was, the defendants infringed.

Judgment affirmed.