### MINNESOTA MIN. & MFG. CO. v. INDUSTRIAL TAPE CORPORATION.
#### No. 9467.

Circuit Court of Appeals, Seventh Circuit.
May 6, 1948.

Rehearing Denied June 10, 1948.

8

Geo. I. Haight and M. K. Hobbs, both of Chicago, Ill., and E. G. Carpenter and Harold J. Kinney, both of St. Paul, Minn., for appellant.

Drury W. Cooper, of New York City, Harry W. Lindsey, Jr., of Chicago, Ill., Arnold S. Worfolk, of New York City, and Johnson & Johnson, of New Brunswick, N. J., for appellee.

Before MAJOR and MINTON, Circuit Judges, and DUFFY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from an order dismissing plaintiff's complaint in a suit for patent infringement. The order of dismissal followed the court's findings of fact and conclusions of law, in which it was found that the claims in suit were invalid because anticipated by certain prior art patents and publications, and that no patentable invention was shown in view of the prior art.

The patent in suit No. 2,221,213, entitled "Tape Dispenser," issued November 12, 1940, to John A. Borden (referred to as the Borden device) and later assigned to plaintiff, relates to a device used in dispensing pressure-sensitive adhesive tape such as the "Scotch" cellulose tape made and sold by the plaintiff, and similar tape made and sold by the defendant under the name "Texcel." The patent contains five claims, but only claims 3 and 5 are relied upon.

A tape dispenser such as disclosed by Borden is a device on which the tape is mounted, drawn off in desired sized pieces and severed for use. Among the various types of tape on the market are glassine tape, which has a paper backing treated to make it transparent, and paper packaging tape. Both of these tapes have gummed adhesives which require wetting to make them stick. Also, there are pressure-sensitive adhesive tapes, of which there is one type having a cloth backing as, for example, surgeon's zinc oxide tape or plaster, another, a fibrous backing such as paper, and still another, a transparent non-fibrous backing such as cellulose. Gummed paper packaging tape has been on the market since as early as 1900, and gummed glassine tape since as early as 1915. Surgeon's zinc oxide pressure-sensitive adhesive tape

has been on the market since as early as 1880, and paper backed pressure-sensitive adhesive tape since as early as 1928. Transparent non-fibrous film backed pressure-sensitive adhesive tape first appeared on the market in late 1930, when it was sold by plaintiff under the trade-name "Scotch" cellulose tape. All of these various kinds of tape have been mounted on dispensers of one type or another prior to the tape dispenser device of the patent in suit.

While the patent by its title and specification relates broadly to adhesive tapes of all sorts, it is directed particularly to a device for holding and dispensing pressure-sensitive adhesive tape, such, for example, as the ordinary surgeon's tape, and such types as are disclosed in United States Patent No. 1,760,820 (directed to a paper backed pressure-sensitive adhesive tape), issued to Richard G. Drew, and other types wherein the adhesive coating is of a normally tacky pressure-sensitive nature. In fact, the claims in suit are so limited.

Claim 5, the broader of the two claims in suit, reads as follows:

"A device suitable for dispensing tape coated with a pressure-sensitive adhesive, comprising

"(A) means for supporting a roll of said pressure-sensitive adhesive tape and

"(B) a severing edge to which said tape will lightly and detachably adhere by reason of its pressure-sensitive coating when brought into contact with said severing edge,

"(C) said severing edge being separated by free space from the position normally occupied by the periphery of said roll between said supporting means and said severing edge, in a manner permitting a portion of the tape extending from said roll to said edge to be grasped for the detachment from said edge for the withdrawal of a portion of said tape from said roll thereof."

Claim 3, the other claim in suit, has an additional element not required by claim 5, that is, "a surface positioned between said roll supporting means and said severing edge to which said tape will lightly and detachably adhere * * *."

There were before the lower court and here numerous prior art patents, publications and uses, from which the court found and concluded that there was no patentable invention disclosed in the claims in suit. The court found and concluded that the claims were invalid in view of the disclosures of the prior art and that they were completely anticipated by certain of such disclosures. Plaintiff argues that the findings of the District Court are ultimate conclusions based on undisputed evidence, and that little, if any, importance should be attached to Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. Numerous cases are cited in support of this contention, which we think need not be discussed or referred to for the reason that the court's findings are not predicated upon undisputed evidence as we read the record. For instance, there is the testimony of defendant's expert that such differences in design as did exist between Borden's device and the prior art were not substantial and that they involved no difference in mechanical principle. Necessarily the plaintiff must and does take issue with this expert testimony, although the court below evidently regarded it as important in evaluating Borden's device in the light of the disclosures of the prior art. Moreover, the conclusion which we have reached, as subsequently shown, makes it of little importance as to how much weight we should give to the findings of the court below.

That court found that the claims in suit did not amount to patentable invention in view of the McCarthy dispenser, an unpatentable device made and sold by the plaintiff for some three and one-half years before the Borden device is said to have been invented. The court also found that a dispenser of the Francis Sales Company, illustrated in the Office Appliance Magazine published in September, 1908, disclosed all the elements of both claims sued upon and was a complete anticipation; that patent No. 1,687,031, issued to J. J. Moore in 1928, was a complete anticipation; that the Johnson & Johnson machine, long employed by the defendant, if not a complete anticipation, leaves no room for patentability; that patent No. 1,608,344, on a dental floss dispenser, issued in 1926, leaves no room for patentability, and that the Shuman patent No. 1,016,966, issued in 1912, together with other prior art patents, contain all the elements of both the claims in suit.

We are of the view that no useful purpose could be served in discussing or analyzing all of this prior art upon which the court predicated its findings and conclusion that the patent was invalid. It is sufficient and we are required to affirm the order appealed from if the claims in suit are anticipated by any one of the prior art patents, publications or devices, or if they fail to disclose a patentable invention in view of such art.

Neither do we see any occasion to enter into a discussion of the sometimes dubious distinction between the invalidation of a patent by anticipation and by lack of novelty or patentable invention in view of the prior art. While the court below made numerous findings of anticipation, it also found the patent invalid in view of the prior art.

In our view, the devices manufactured and sold by the plaintiff prior to the time of the invention in suit, referred to as the McCarthy dispenser (plaintiff's exhibit 11) and the Clark dispenser (plaintiff's exhibit 12), are the most pertinent prior art. While it may be conceded that the patent in suit represented some improvement over these prior devices, we are in accord with the lower court that such improvement did not amount to patentable invention. As to the McCarthy dispenser, the court found: "The prior art as proved before the Court, included the early dispensers made and sold by the plaintiff and of which Exhibit 11 is typical. They were made, as early as 1930, three and one-half years before the device of the Borden patent was said to have been invented. This type has in it all the elements of claim 5 of the patent in suit, it being obvious that the tape instead of being brought around beneath the knife may be brought around over the knife and severed downwardly instead of being severed upwardly. Claim 3 is lacking in invention over this type of dispenser."

In the first place, we must notice the contention that the McCarthy device

was improperly relied upon by the defendant and the court because it was not pleaded by the defendant. It is asserted that the defense of anticipation must be pleaded or noticed, as required by Title 35 U.S.C.A. § 69. The record discloses that these prior art devices of the plaintiff were exhibited and explained to the court by plaintiff's counsel in his opening statement and that they were offered and introduced into the record by plaintiff. It perhaps is true, as asserted by plaintiff, that they were offered only for the purpose of showing the prior state of the art, and that such unpleaded devices can not properly be relied upon to show anticipation. Oswell v. Bloomfield et al., 7 Cir., 113 F.2d 377, 378; Bank v. Rauland Corp. et al., 7 Cir., 146 F. 2d 19, 23; Hendy v. Golden State & Miners' Iron Works, 127 U.S. 370, 375, 8 S.Ct. 1275, 32 L.Ed. 207. It does not follow, however, that they may not be relied upon even though not pleaded, to show that the patent in suit is invalid for want of invention over such art. As was stated by this court in the Oswell case, supra, 113 F.2d at page 378: "We think appellant's contention in this respect is not sound. Proof of the state of the art is always admissible to show want of invention regardless of whether or not that defense is pleaded. [Citing cases.] It seems that the requirement of notice of specific defenses is limited to the defense of invalidity because of anticipation and want of novelty, and does not apply to the defense of want of invention. [Citing cases.]"

The logic of this rule is at once apparent. Plaintiff introduced its prior devices to show the state of the art at the time the invention of the patent in suit was conceived. This must have been for the purpose of showing a patentable invention over such art. Plaintiff's contention, however, would lead to the illogical result that these prior unpleaded devices could be utilized by it to show a patentable invention but could not be relied upon by the defendant to show a lack of invention. It should also be noted that the court did not find that the claims in suit were anticipated by McCarthy but that they were invalid in view of the McCarthy disclosure. We must, therefore, reject plaintiff's contention that the McCarthy device may not be properly relied upon to invalidate the patent.

The McCarthy dispenser, an unpatented device, was made for and sold by the plaintiff in 1930, 1931, and 1932, when it was supplanted by the Clark dispenser, which was made for and sold by the plaintiff for several succeeding years, or until it was supplanted by the Borden device. The McCarthy device is of light weight metal providing a drum to support a roll of tape mounted on a core. A pivoted knife is swung upwardly to thread the tape underneath the knife, adhesive side down. The knife is then latched into operating position. The Clark device differed from McCarthy by eliminating the swinging gate knife in favor of an open slot at the side of the dispenser. As found by the lower court, the McCarthy device discloses every element called for in claim 5 in suit, that is, (1) a means for supporting a roll, (2) a severing edge and (3) free space between the supporting means and the severing edge. That an improved result was obtained from the Borden device is hardly open to question but such result, in our opinion, must be attributed to the manner in which the tape was dispensed in connection with the device rather than any improvement in the device itself. In the McCarthy device, the tape was severed from the non-adhesive side. In the Borden device, it is severed from the adhesive side. Yet, this claimed patentable invention resides almost entirely in the discovery that when severed from the adhesive side, it would attach, something it would not do when severed from the non-adhesive side. It plainly appears that the non-attachment of the end of the roll of tape, after severance, was responsible for the defects which plaintiff asserts, (1) the dangling end of the tape, (2) the frequency with which the loose end wound itself back on the roll to be laboriously picked off by the operator's fingernail, (3) re-threading the dispenser, and (4) smudging the end of the tape with the operator's finger.

It is equally plain that these defects were eliminated when the end of the roll of tape, after severance, remained attached, as is the case when tape is dispensed by means of the Borden device, and also as dispensed by

the McCarthy device when the tape was severed from the adhesive side. While plaintiff admits, as it must, that McCarthy has a severing edge, it argues that it does not meet the element of the claim which calls for "a severing edge to which said tape will lightly and detachably adhere," although it states in its brief (referring to the McCarthy device), "The tape can be cut over the knife, but it is 'so lightly' adhered 'that the slightest jar' will set it free. 'The slightest jar of the roll will upset it.'"

While the claim calls for a light adherence, the point of plaintiff's argument appears to be that the adherence of the McCarthy device is too light or lighter than intended by the claims. It no doubt is true that the tape when dispensed in the Borden device is left more securely attached than when dispensed by the McCarthy device. This, however, is not because any different principle is employed but because the Borden device provides a broader attaching surface than McCarthy. We think it would not even require a person skilled in the art to know that the degree of attachment is determinable by the area of the surface of the object with which the tape comes in contact.

Neither do we think the additional element found in claim 3, that is, "a surface positioned between said roll supporting means and said severing edge," adds anything to the patentable status of the invention. We think it makes no difference from the standpoint of patentability and certainly it makes none as to the principle of operation whether the surface provided for the attachment of the tape is located at and in connection with the severing edge or at some point between such edge and the roll supporting means, as is called for by the additional element of this claim. Moreover, the McCarthy device has a surface which meets this element of the claim and to which the tape will lightly adhere just as it lightly adheres to the severing edge when the device is employed to dispense the tape so that it will be severed from its adhesive side.

Notwithstanding plaintiff's forcible argument, persuasive in some respects, we have no serious difficulty in concluding that the device of the patent in suit involves no patentable invention over plaintiff's prior art structures, and particularly over the McCarthy device. The slight improvement of the mechanical structure, as well as the improved method of operation, was in our judgment, well within the realm of a person skilled in the art. As was stated in International Steel Wool Corp. v. Williams Co., 6 Cir., 137 F.2d 342, 346:

"Invention does not consist in the mere conception of applying an old method or device to a new use, if the new use is so analogous to the old that the thought of adapting the device and applying it to the new use would occur to a person skilled in the art and seeking to devise means to perform the desired function. In such case even though changes or modifications are essential to the practical application of the method or device to the new use, invention is not involved. [Citing cases.]"

In affirming the lower court's holding of invalidity, we are not unmindful of the presumption which attaches to the patent grant. We are convinced, however, that such presumption has been clearly overcome in the instant matter. We have also taken note of the commercial success attributed to the patentee's device and that defendant discarded its own type dispenser and adopted that of the plaintiff. Argument predicated upon these premises, however, is beside the point unless the court is in doubt on the issue of validity, which we are not. Moreover, we see no reason why commercial success could not as well be attributed to an improved device even though it falls short of a patentable status. Also, in the absence of a patentable invention, the defendant or anyone else was free to adopt and use it.

The order appealed from is affirmed.