**ALCO KAR KURB, INC., Appellant,**

v.

**Victor L. AGER, doing business as Totowa Concrete Block Company and Two Guys From Harrison, Totowa, Inc.**

No. 13276.

United States Court of Appeals Third Circuit.

Argued Nov. 29, 1960.

Decided Feb. 6, 1961.

Arthur H. Jacobs, Philadelphia, Pa. (Caesar & Rivise, Philadelphia, Pa., A. D. Caesar, Philadelphia, Pa., on the brief), for appellant.

Albert C. Nolte, Jr., New York City (Moses, Nolte & Nolte, New York, N. Y., on the brief), for appellee.

Before McLAUGHLIN, HASTIE and FORMAN, Circuit Judges.

HASTIE, Circuit Judge.

In this action appellant, the present owner of United States Patent No. 2,-794,375, issued to Domenick and Peter Di Falco, has sued appellee and others for patent infringement. On motion for summary judgment, the court below found the patent in suit invalid both because the device lacked invention and because its claims had been anticipated by the prior art. From the consequent order dismissing the suit, this appeal has been taken.

The patent in suit is for a prefabricated curbing designed for installation on parking lots as a bumper or stop for automobiles. The basic prefabricated unit as described in the patent is an elongated concrete beam or block of specified shape. Except on the underside, the faces of the block are rectangular planes. On the underside, only a center section and two end sections of the block touch the ground or other supporting surface. Between each end pier and the center pier, a longitudinal arch is hollowed out to permit the drainage of surface water. Vertical anchorage holes are bored through the center of the block and through the end piers. Anchorage pins, of diameter slightly less than the bore of the holes, are inserted in the holes and driven into the ground. These anchorage pins are headless, thus permitting the easy lifting and replacement of a unit without moving the pins or damaging the block. Each end wall of a curbing block is constructed with a vertical tongue or groove so that it will fit the corresponding groove or tongue of the adjacent unit, thus providing a stable sectional assembly. This is the essence

of the patented device, although various arrangements and combinations of the basic unit are stated in five claims of the patent.

■ At the outset, it is clear that mere plurality of units in a structure adds nothing inventive to the conception of the basic unit. Dunbar v. Myers, 1876, 94 U.S. 187, 24 L.Ed. 34; Hamilton Standard Propeller Co. v. Fay-Egan Mfg. Co., 6 Cir., 1939, 101 F.2d 614; Maier v. Bloom, C.C.D.N.J.1899, 95 F. 159. In addition, it is conceded that the tongue and groove arrangement for joining the units is old and familiar. However, the drainage arches and the patentees' solution of the problem of easy removal and replacement are said to be inventive features.

The drainage arches need not detain us. Any intelligent person faced with the problem of constructing a transverse barrier in such a way as not to obstruct surface drainage would try some sort of concavity in the underside of the barrier. Indeed, as the court below observed in its opinion: "The employment of arches, holes or tubes in a solid barrier placed across the course of a fluid flow to permit it to pass through or beneath, rather than over, the obstruction is as old as a stone bridge across a stream, 'weep-holes' in an earth-retaining fall or flowage tunnels beneath a power dam." Even in parking lot construction, earlier patents considered by the court below show that barriers have been devised with drainage concavities on the underside.

Appellant strongly stresses the significance of the use of headless anchorage pins which fit loosely in vertical holes in the block so that each curbing unit is stable yet easily removable. However, it was demonstrated to the court below that carpenters achieve the same result in the same way when they use headless nails to hold molding securely in place without making removal difficult. Moreover, earlier patents have secured car bumpers with pins which differ from those here involved only in that they are headed. This led the court below to the reasonable conclusion that any mechanically minded person who desired to make curbing units more easily removable would merely eliminate heads from the anchorage pins shown in earlier patents. Hence, the omission of the head is not inventive. Cf. In re Listen, 1943, 136 F.2d 719, 30 CCPA 1223.

Next, regardless of the familiarity of the simple mechanical concepts and procedures embodied in the patent, it is said that the result of their combination is a novel and useful device worthy of patent protection. This contention cannot prevail.

■■ The claimed invention is nothing more than an appropriately adapted solid beam affixed to the ground to stop the movement of automobiles. The only devices of special adaptation are concavities for drainage on the underside of the beam, tongues and grooves at the beam ends, and headless pins for attachment of the structure to the ground. Enough has already been said to show that this is an aggregation of old and familiar mechanical features which, used together in appellant's curbing, perform only the several normal and familiar functions which they have long been known and employed to perform separately. Thus analyzed, the aggregation does not meet the established standard of patentable invention. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 1950, 340 U.S. 147, 71 S.Ct. 127, 95 L. Ed. 162; Mojonnier Bros. Co. v. Tolan Machinery Co., 3 Cir., 1956, 230 F.2d 850; Packwood v. Briggs & Stratton Corp., 3 Cir., 1952, 195 F.2d 971, certiorari denied 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657. It remains the law that the "mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention". Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 1938, 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008. Compare the similar language in Rich-

ards v. Chase Elevator Co., 1895, 159 U.S. 477, 487, 16 S.Ct. 53, 40 L.Ed. 225.

 Finally, we have not ignored appellant's reminder that a significant presumption of validity attends a patent issued, as this one was, only after the Patent Office Board of Appeals, in a contested proceeding, has considered the nature of the structure and decided that it is a patentable invention. Modern Products Supply Co. v. Drachenberg, 6 Cir., 1945, 152 F.2d 203, certiorari denied 1946, 327 U.S. 806, 66 S.Ct. 964, 90 L. Ed. 1030. But respect for such considered administrative decision does not justify abdication of the normal judicial function. It still remains the responsibility of the United States courts to see that patent monopoly is enjoyed only pursuant to a correct standard of invention properly applied. In Great Atlantic & Pacific Tea Corp. v. Supermarket Equipment Corp., supra, the Supreme Court reversed a finding of invention in which two federal courts, as well as the patent office, had concurred. In so doing the Court used language which we find also applicable to the present case:

> "Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly." 340 U.S. at pages 152–153, 71 S.Ct. at page 130.

The court below was clearly right in invalidating the patent in suit. Accordingly, the judgment will be affirmed.