Anton LORENZ, Plaintiff-Appellant,

v.

F. W. WOOLWORTH CO., Defendant-Appellee.

No. 274, Docket 27159.

United States Court of Appeals
Second Circuit.

Argued March 29, 1962.

Decided July 5, 1962.

Morton Amster of Amster & Levy, New York City (Edward F. Levy and Jesse Rothstein, New York City, of counsel, on the brief), for plaintiff-appellant.

William K. Kerr, New York City (Henry R. Ashton and Robert B. Whittredge, New York City, on the brief), for defendant-appellee.

Before MEDINA, SMITH and HAYS, Circuit Judges.

HAYS, Circuit Judge.

This is an appeal from a judgment of the District Court, holding invalid for lack of invention Patent No. 2,880,785, issued on April 7, 1959 to Fridtjof F. Schliephacke, plaintiff's assignor. We affirm the judgment.

The patent involves a mechanism for the operation of a reclining chair with a movable leg-rest. Chairs with leg-rests that rise to a horizontal position when the back is reclined were widely used prior to this patent. The patent in suit was intended to cover only a new design of the hardware that is used to accomplish that result and not the chair itself.

In a chair equipped with the Schliephacke device, the leg-rest is elevated from a vertical to a horizontal position by the interaction of a lazy-tong linkage and a single actuating link. The lazy-tong linkage, consisting of two sets of links, pivotally connected at a point on the forward link of the rear set and the rear link of the forward set, is pivoted to the leg-rest at one end of each set. The opposite end of each linkage is pivotally connected to the side of the seat toward the front. The rear link of the rear linkage has a short angular extension pointing downward. The actuating link is pivotally connected to the end of this extension and to the base of the chair.

A lazy-tong linkage will raise a leg-rest to which it is pivotally attached when a forward force is applied to the rear link. In the Schliephacke device, that force is provided by the direct actuating link which remains fixed when the seat, to which the lazy-tongs are attached, moves upward and back. The seat is linked to the base and the back of the chair in such a way that it moves upward and back when the back of the chair is reclined.

That the Schliephacke patent is "new and useful" (35 U.S.C. § 101 (1958)) is attested to by its widespread acceptance by the trade.[1] The record shows that in 1959 and 1960, manufactured by both licensees and non-licensees, the device completely dominated the trade.

The question on which this appeal turns therefore is whether the patent in suit satisfies the requirements of 35 U. S.C. § 103 (1958):

"*Conditions for patentability; non-obvious subject matter.* A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. * * *"

We agree with Judge Dawson, who, in the court below, reviewed the prior art and held the patent invalid for failure to meet this statutory test.

Both the lazy-tong linkage and the direct actuating link were known in the prior art. Lazy-tong linkages, substantially the same as those employed in the Schliephacke device, appear in Lorenz, Patent No. 2,781,824, issued February 19, 1957; Lorenz, Patent No. 2,843,184, issued July 15, 1958; Luckhardt, Patent No. 2,870,822, issued January 27, 1959, and Bank et al., Patent No. 2,838,093, issued June 10, 1958. In the first three the lazy-tongs are actuated by a link connecting a lower extension of the chair backs to a point on the lazy-tongs. The reclining of the back in relation to the lesser movement of the seat sends the extension forward and provides the force for raising the leg-rest. In the Bank device a similar connecting link is employed but it connects the lazy-tongs with a lower extension from the seat of the chair rather than with the back. It is the incline of the seat, rather than the back, that provides the force and the device can thus be used regardless of whether the back moves in relation to the seat.

---

1. The improvements concern "balance" of the chair and economy of production.

Luckhardt et al., Patent No. 2,276,053, issued March 10, 1942, shows a single linkage pivotally attached at one end to the leg-rest and at the other to a lower extension from the seat. Near the end of this latter link on the front side a single direct actuating link is pivotally attached. The other end of the actuating link is pivotally attached to the lower frame of the chair. Exactly as in the Schliephacke device, the fixed position of the actuating link prevents the linkage from moving back with the seat and thus actuates it, causing the leg-rest to rise. Compare Greaves & Thomas, Ltd., British Patent No. 737,396, issued September 28, 1955.

Thus, the Schliephacke device combines the direct actuating link so clearly demonstrated in the Luckhardt patent with the lazy-tong linkage repeatedly shown in other patents. It would be difficult indeed to conclude that this combination of proven ingredients each performing the identical function performed in the earlier separate applications is something that would not have been "obvious to a person having ordinary skill in the art." Great Atl. and Pac. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151–153, 71 S.Ct. 127, 129, 130, 95 L.Ed. 162 (1950);[2] Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 664, 82 L.Ed. 1008 (1938).[3]

 Appellant points to the commercial success of the Schliephacke device and argues that if the combination was in fact obvious to a worker skilled in the art, some such worker would have combined the lazy-tong linkage and the direct actuating link before Schliephacke. Commercial success by itself does not establish the validity of a patent.[4] However, in a proper case it is relevant on the issue of obviousness that the patent under attack served to satisfy a "long felt want." Reiner v. I. Leon Co., 285

2. "The conjunction or concert of known elements must contribute something; only when the whole in some way exceeds the sum of its parts is the accumulation of old devices patentable. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. * * *" 340 U.S. at 152–153, 71 S.Ct. at 130.

3. "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." 303 U.S. at 549, 58 S.Ct. at 664 (1938).

4. "The fact that this process has enjoyed considerable commercial success, however, does not render the patent valid. It is true that in cases where the question of patentable invention is a close one, such success has weight in tipping the scales of judgment toward patentability. [Citation.] Where, as here, however, invention is plainly lacking, commercial success cannot fill the void. [Citations.]" Jungersen v. Ostby & Barton Co., 335 U.S. 560, 567, 69 S.Ct. 269, 272, 93 L.Ed. 235 (1949). See Magnus Harmonica Corp. v. Lapin Products, 236 F.2d 285 (2d Cir. 1956); Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9, 11 (2d Cir.), cert. denied, 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).

It should be added that in cases of patents on devices improving an existing product, there is every reason to severely limit the weight attributed to commercial success. The distinction between a mere improvement and an invention is well known in the law of patents, and incorporation of a device by manufacturers can be explained solely by the former. See Minnesota Mining & Mfg. Co. v. Industrial Tape Corp., 168 F.2d 7, 11 (7th Cir.), cert. denied, 335 U.S. 829, 69 S.Ct. 56, 93 L.Ed. 382 (1948). Moreover the volume of sales of chairs utilizing the Schliephacke device is irrelevant, when there is nothing in the record to show that sales were attributable to the improvement, or that sales of reclining chairs increased when the Schliephacke mechanism was adopted. See Welsh Manufacturing Co. v. Sunware Products Co., 236 F.2d 225, 227 (2d Cir.1956).

F.2d 501, 504 (2d Cir. 1960), cert. denied, 366 U.S. 929, 81 S.Ct. 1649, 6 L. Ed.2d 388 (1961). Here, the only evidence of "long felt want" is the relatively large number of patents issued on reclining chair hardware in recent years,[5] an indication of considerable interest in the improvement of these devices, together with the immediate adoption of the Schliephacke device by the trade. Appellant cannot point to a specific problem to which workers in the field were directing their attention and which was solved by the Schliephacke device. As we said in E. J. Brooks Co. v. Stoffel Seals Corp., 266 F.2d 841, 842 (2d Cir.), cert. denied, 361 U.S. 883, 80 S.Ct. 154, 4 L.Ed.2d 119 (1959):

> "But apart from the usual and common desire of manufacturers constantly to improve their product —the stimulus of nearly all routine engineering improvements—there is no evidence of any specific and recognized problems which the claimed invention solved."

Appellant places great weight on the presumption of validity attached by statute to a duly issued patent (35 U.S.C. § 282 (1958)). The presumption of validity relieves the patent holder of the burden of establishing that validity as a requisite for the successful maintenance of an infringement action, and places the burden of establishing invalidity on the alleged infringer who

asserts it. International Carrier-Call & Television Corp. v. Radio Corp. of America, 142 F.2d 493, 495 (2d Cir. 1944); Western States Mach. Co. v. S. S. Hepworth Co., 147 F.2d 345, 348 (2d Cir.), cert. denied, 325 U.S. 873, 65 S.Ct. 1414, 89 L.Ed. 1991 (1945). More than that, the most that can be said of the presumption is that it requires that reasonable doubt on the question of validity be resolved in favor of the patent holder. See Mumm v. Decker & Sons, 301 U.S. 168, 171, 57 S.Ct. 675, 81 L.Ed. 983 (1937). The statute does not require that the presumption be accorded the weight of actual evidence or that the use of the presumption should affect a decision of invalidity that would otherwise be reached with confidence. This court has recognized the unavoidable obstacles to an accurate and impartial decision that are inherent in *ex parte* proceedings in the patent office, Guide v. Desperak, 249 F.2d 145, 148 (2d Cir. 1957). We cannot properly allow decisions of that office to alter the preponderance of the evidence on the question of validity.[6] See Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 156, 71 S.Ct. 127, 95 L.Ed. 162 (1950); In re Thomson, 26 App.D.C. 419, 425 (1906); cf. Lyon v. Bob, 1 F.2d 48 (S.D. N.Y.1924) (L. Hand, J.), rev'd, 10 F.2d 30 (2d Cir. 1926).[7] In the present case, defendant satisfied his burden of coming forward with evidence of invalidity

---

5. See note 6, infra.

6. Since 1950, eighteen patents on different variations of hardware for use in reclining chairs with movable leg-rests have been issued. Obviously there have not been eighteen "inventions" in this narrow area in the last twelve years. When inconsistent monopoly grants thus seemingly flow from the Patent Office, it is clear that the weight to be attached to the determination of patent examiners must be very limited, and is totally unlike the weight accorded the determination of an administrative agency made after an adversary proceeding.

7. In addition, it should be pointed out that none of the particular patents evidencing prior art which were relied on by the court below or by this court were called

to the attention of the patent examiner and there was no intervention in opposition to the issuance of the Schliephacke patent. Both of these factors tend to weaken or negate the presumption. Cutler Mail Chute Co. v. Capitol Mail Chute Corp., 118 F.2d 63, 64 (2d Cir.), cert. denied, 313 U.S. 580, 61 S.Ct. 1096, 85 L.Ed. 1537 (1941); Celanese Corp. v. Essley, 98 F.2d 895 (2d Cir.1938) petition for cert. dismissed, 307 U.S. 649, 59 S.Ct. 836, 83 L.Ed. 1528 (1939); R. Hoe & Co. v. Goss Printing Press Co., 30 F.2d 271, 274 (2d Cir.1929); see Alco Kar Kurb Inc. v. Ager, 286 F.2d 931 (3d Cir.1961). However, although it is not clear whether he is correct, appellant argues that other patents that were considered by the patent examiner reveal the same elements of the prior art.

and we have no such doubts on the question as would bring the presumption further into play.

MEDINA, Circuit Judge (dissenting).

Indeed, the combination seems "obvious" once the prior art is understood and Schliephacke's patent is explained. The mechanism is very simple, and man flatters himself by concluding that such combinations are obvious; simplicity, once explained, tends to be obvious to all men. But hindsight is not the test of patentability. 35 U.S.C. § 103; Copease Mfg. Co. v. American Photocopy Equip. Co., 7 Cir., 1962, 298 F.2d 772, 781; Honolulu Oil Corp. v. Shelby Poultry Co., 4 Cir., 1961, 293 F.2d 127, 131; Reiner v. I. Leon Co., 2 Cir., 1960, 285 F.2d 501, cert. denied, 1961, 366 U.S. 929, 81 S.Ct. 1649, 6 L.Ed.2d 388; Compare Goodyear Tire & Rubber Co. v. Ray-O-Vac Co., 1944, 321 U.S. 275, 279, 64 S.Ct. 593, 88 L.Ed. 721.

We should take care to see that "obvious" does not become a meaningless word, used to justify preconceived notions. When the record furnishes a basis for resort to objective evidence, such signposts should be given primary consideration by the Court.[1] As stated by Judge Learned Hand in Reiner v. I. Leon, supra, at page 504:

> "To judge on our own that this or that new assemblage of old factors was, or was not, 'obvious' is to substitute our ignorance for the acquaintance with the subject of those who were familiar with it."

Rather than rely on our own hindsight as to the perspicuity of the fictional or theoretical "person having ordinary skill in the art," we should use what objective evidence is relevant, keeping in mind that the "person" is assumed to be familiar with all the prior art material, see 35 U.S.C. Section 102, (Federico,

Commentary on the New Patent Act, 35 U.S.C.A. § 1 to § 110 at p. 21 [1954]), despite the fact that workers in the field may not be.

It is not nor can it be with any show of reason denied that the proofs in this case demonstrate that the trade had for a long period of time recognized the need to improve the economy of construction and simplicity of operation of reclining chairs, and at the same time to achieve an extension of the leg rest adequate to support the legs of the occupant; all this to be done in a chair that will "balance" well, i. e., move easily and stay in any position without the use of springs. These are the features found in Schliephacke's chair. Such a recognized need of long standing is clearly relevant to the issue of obviousness. The existence and recognition of this need is amply attested by the facts of the case. And it seems to me to be no answer at all to say that the "problem" to which the workers in the field were addressing themselves was not sufficiently "specific." See Entron of Maryland, Inc. v. Jerrold Electronics Corp., 4 Cir., 1961, 295 F.2d 670; Honolulu Oil Corp. v. Shelby Poultry Co., supra; Reiner v. I. Leon Co., supra; Norman v. Lawrence, 2 Cir., 1960, 285 F.2d 505; American Safety Table Co. v. Schreiber, 2 Cir., 1959, 269 F.2d 255, cert. denied, 361 U.S. 915, 80 S.Ct. 259, 4 L.Ed.2d 185.

Patents for reclining chairs appear as early as 1852, and there are today well over one hundred and fifty patents in the field. Despite this number, the need for a chair with Schliephacke's improvements still existed, as is shown by the fact that within but six years prior to the issuance of the patent in suit, no less than thirteen patents for reclining chairs were issued. Schliephacke's success where others had failed is shown by "the immediate adoption of the Schliephacke

1. E.g., Ekstrom-Carlson & Co. v. Onsrud Machine Works, Inc., 7 Cir., 1962, 298 F. 2d 765, 770; Entron of Maryland, Inc. v. Jerrold Electronics Corp., 4 Cir., 1961, 295 F.2d 670, 675; Bewal Inc. v. Minnesota Mining & Mfg. Co., 10 Cir., 1961, 292 F.2d 159, 165. Compare Reviser's Note, 35 U.S.C.A. § 1 to § 110 at p. 715 (1954) ("[Section 103 is] * * * to serve as a basis for the addition at a later time of some criteria which may be worked out.").

device by the trade," and its use as a substitute for what had gone before.

The prior art patents, as well as the testimony at the trial, make it clear that many were "trying to find the way." Of the twenty-seven prior art patents specifically relied on by the alleged infringer, twenty-three are to different patentees. How many more were trying to find the way, but failed to make a patentable advance, can only be surmised. The reclining chair industry appears to have been highly competitive, and practical incentive was not lacking.

The means by which Schliephacke satisfied the need were long available and known to those trying to achieve the same result. Links and pivots are of nearly ancient origin, and have been used by designers of reclining chairs at least since 1852. Hammitt, Patent No. 9,449 (1852). The means were before the eyes of those who sought to design a chair with the features of the Schliephacke chair.

To say now in retrospect that the patented combination was "obvious" is totally to ignore the evidence that though the means were well known, none of the many who worked for years to obtain the result achieved by Schliephacke thought of making this allegedly "obvious" combination. The issue of obviousness should be decided by the use of this type of objective evidence as a yardstick. Otherwise, we are pretending to decide what was or was not obvious to the worker in the field in question, but really making a guess, a mere stab in the dark, on the basis of our own very limited, personal experience, what Judge Learned Hand calls our "ignorance." And we make this guess only after the secret that lies at the base of the alleged invention has been explained to us. Thus some of us say "this is just a gadget" and some of us say "no." This is one of the reasons why the decision of patent cases in this Circuit seems sometimes to depend upon the particular combination of judges sitting on the panel that decides each case.

Moreover, while it seems to be popular nowadays to cry down the Patent Office, I should like to take this occasion to say that after several years as a District Judge, and over ten years of experience on this Court deciding patent cases, I think the Patent Office is doing a good job.

In my opinion the patent is valid and the case should be reversed and remanded for a new trial at which the issue of infringement may be determined.