Frances P. NORMAN and Frances P. Norman d/b/a The Norman Company, a partnership consisting of Frances P. Norman and Norman Norman, Plaintiffs,

v.

Leonard LAWRENCE, Defendant.

Civ. No. 17018.

United States District Court
E. D. New York.

Nov. 2, 1959.

Kenyon & Kenyon, New York City, Ralph L. Chappell, Richard A. Huettner, New York City, of counsel, for plaintiffs.

Mock & Blum, Blum, Moscovitz, Friedman & Blum, New York City, Alex Friedman, New York City, of counsel, for defendant.

BRUCHHAUSEN, Chief Judge.

The plaintiffs seek an injunction and damages for infringement of a patent, issued to plaintiff, Frances P. Norman, of a pad with an expansible opening, for attachment to an earring. On November 27, 1953, the patent application was filed and on September 26, 1956, Letters Patent No. 2,763,999 were granted.

The defendant by his answer denied that he infringed the patent and interposes various defenses, later dealt with. The defendant also counterclaimed for alleged infringement of his patent.

The plaintiffs assert that they developed a new and useful process eliminating discomfort caused by earring clamps. The articles on the market prior to the introduction of plaintiffs' article were so-called stick-on pads, supposed to remain glued onto the rear of the earring clamp upon application of finger pressure. However, these pads would continually loosen and become caught in a user's hair. Also, on the market was a tubular rubber cot or sleeve for twisting on to the rear of the earring. The cot or sleeve was found unsatisfactory because the rubber cots or sleeves were difficult to twist on to the earring clamp and, since the clamps were not strong, would frequently break. The plaintiff, Frances P. Norman, then experimented and eventually developed her article, a flat flexible thin rubber pocket created by the dipping of two flat thin rubber pieces into a latex solution, holding the pocket intact and rendering it extremely flexible. It also developed that a sponge rubber pad could be retained on the flat side of the rubber pocket, which would not slip off or loosen from the pocket.

In May 1953, the plaintiffs commenced production of the new earring pad. As hereinafter mentioned the commercial success was phenomenal. The trade name adopted by the plaintiffs was "Go-Betweens". Subsequently the defendant

circulated in the market duplicates of the plaintiffs' article. By letter from the plaintiffs' attorney addressed to the defendant he was informed that he was infringing upon the plaintiffs' product and that there was a patent pending on the plaintiffs' article. The defendant remained out of the market for a year. Thereafter he produced separate packages, one containing flat thin flexible rubber pockets, and the other foam rubber cushions, with directions on the card carrying the pocket, as follows: "Recommended: For extra comfort place a 'Comfees' adhesive rubber foam disk on Bootee." This combination called "Comfees" duplicated the plaintiffs' article.

■ The defendant challenges the sufficiency of the plaintiffs' patent claim upon the ground of want of invention in view of the prior art and of what was common knowledge to those skilled in the art prior to the date of the alleged inventions. The Patent Act of 1952, 35 U.S.C. § 282 provides that "a patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it." The burden on the defendant, seeking to invalidate the patent for want of novelty, is very heavy. "Every reasonable doubt should be resolved against him." Radio Corporation of America v. Radio Engineering Laboratories, Inc., 293 U.S. 1, 55 S.Ct. 928, 931, 79 L.Ed. 163; Mumm v. John E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983.

The defendant testified on direct examination that the rubber tube or cot had been on the market at least thirty years. It was produced by Dorsay Products. He further testified that prior to the plaintiffs' product he manufactured foam rubber sponge pads with pressure-sensitive adhesive backs for application to the rear of earring clamps for comfort. However, no one skilled in the art for over thirty years seemed to or did take these two independent agents and couple them. It is apparent, therefore, that the idea was not obvious, but rather new or novel. A real need was satisfied by the Norman invention.

The defendant alleges that the plaintiffs were not the original and first inventors of the product. Prior to the plaintiffs' product, the persons skilled in the art of earring comfort had before them various sizes and shapes of sponge rubber pads, and rubber tubes or cots for application to the rear of the earring for maximum comfort.

■ Although mechanics handled these selfsame materials daily in their field of operations, they never assembled them or developed a product such as the plaintiffs'. As stated by Judge Learned Hand in B. G. Corporation v. Walter Kidde & Co., Inc., 2 Cir., 79 F.2d 20, the act of selecting materials and assembling them in such a manner, proving serviceable to a given need may require a high degree of originality. It is the act of selection which is the invention, and it must be beyond the capacity of commonplace imagination. In the case of Van Heusen Products v. Earl & Wilson, D.C., 300 F. 922, it is set forth that for a period of twenty years the affected public was yearning for a starchless collar, one possessing softness, but yet retaining its shape. The court held that the development of such a collar had long eluded those skilled in the art. The developer of cross-weaving the material in the collar was held to have created something new and the patent was upheld. In Lyon v. Bausch & Lomb Optical Co., 2 Cir., 224 F.2d 530, Judge Learned Hand held to the same effect and writing for a unanimous court stated, at pages 534, 535:

"Therefore we at length come to the question whether Lyon's contribution, his added step, was enough to support a patent. It certainly would have done so twenty or thirty years ago; indeed it conforms to the accepted standards of that time. The most competent workers in the field had for at least ten years been seeking a hardy, tenacious coating to prevent reflection; there had been a number of attempts, none satisfactory; meanwhile nothing in the implementary arts had been lacking

to put the advance into operation; when it appeared, it supplanted the existing practice and occupied substantially the whole field. We do not see how any combination of evidence could more completely demonstrate that, simple as it was, the change had not been 'obvious * * * to a person having ordinary skill in the art'—§ 103. On the other hand it must be owned that, had the case come up for decision within twenty, or perhaps, twenty-five, years before the Act of 1952 went into effect on January 1, 1953, it is almost certain that the claims would have been held invalid. The Courts of Appeal have very generally found in the recent opinions of the Supreme Court a disposition to insist upon a stricter test of invention than it used to apply—indefinite it is true, but indubitably stricter than that defined in § 103. Indeed, some of the justices themselves have taken the same view. The Act describes itself as a codification of existing law, as it certainly is in the sense that the structure of the system remains unchanged. Moreover those decisions that have passed upon it have uniformly referred to it as a codification, although so far as we have found none of them has held that § 103 did not change the standard of invention. And so the question arises whether we should construe § 103 as restoring the law to what it was when the Court announced the definition of invention, now expressly embodied in § 103, or whether we should assume that no change whatever was intended."

Subsequently in the case of Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 258 F.2d 124, 132, the Court held:

"There are other factors, however, which we must consider. One is that plaintiff is attacking a patent duly issued by the Patent Office. From this flows a presumption of validity, a presumption which is perhaps too often minimized in the courts. Indeed, since the passage of the 1952 Act, 35 U.S.C.A. § 1 et seq., we have had occasion to comment on the fact that restrictive judicial views of inventiveness developed in cases where duly issued patents were declared invalid departed from the more liberal standards pertaining at a prior time and forced a Congressional reinvigoration of the standards. Lyon v. Bausch & Lomb Optical Co., 2 Cir., 1955, 224 F.2d 530, certiorari denied 350 U.S. 911, 76 S.Ct. 193, 100 L.Ed. 799. Expertness and experience in passing upon patents lie primarily in the Patent Office and these important factors are only partially offset by the greater concentration and the additional relevant evidence which can be brought to bear in any particular patent litigation in the courts. The presumption of validity is entitled to particular weight when, as here, the file wrapper history discloses a careful consideration in the Patent Office before issue."

The commercial success of "Go-Betweens" must be viewed in the light of the long-continued public acquiescence in the validity of the patent. The plaintiffs in the first year of production of their product, earned $2,000. Within four years sales jumped to an incredible $108,000. It would appear obvious, therefore, that the patent under attack was successful because it was recognized as a novel and inventive solution to old problems, meeting a long standing need. Such commercial success is an important factor in a doubtful case. Technical Tape Corp. v. Minnesota Mining & Manufacturing Co., 2 Cir., 1957, 247 F.2d 343, 347, certiorari denied 355 U.S. 952, 78 S.Ct. 537, 2 L.Ed.2d 529; City of Grafton, W. Va. v. Otis Elevator Co., 4 Cir., 1948, 166 F.2d 816, 819.

The defendant alleges that the patent is void for want of definiteness. In the case of United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 237, 63 S.Ct. 165, 170, 87 L.Ed. 232, the court held that

"an invention must be capable of accurate definition, and it must be accurately defined, to be patentable." The Court of Appeals for this Circuit, in the case of Georgia-Pacific Corp. v. United States Plywood Corp., 2 Cir., 258 F.2d 124, 136, after quoting the aforesaid statement from the United Carbon opinion, said that

" '* * * the requirement of the Act for definiteness in the statement of claims must be strictly construed,' Helene Curtis Industries, Inc. v. Sales Affiliates, supra, 2 Cir., 233 F.2d [148], at page 160. * * Patentable inventions cannot always be described in terms of exact measurements, symbols and formulae, and the applicant necessarily must use the meager tools provided by language, tools which admittedly lack exactitude and precision. If the claims, read in the light of the specifications, reasonably apprise those. skilled in the art both of the utilization and scope of the invention, and if the language is as precise as the subject matter permits, the courts can demand no more. See Lever Bros. Co. v. Procter & Gamble Mfg. Co., 4 Cir., 1943, 139 F.2d 633, 639; H. H. Robertson Co. v. Klauer Mfg. Co., 8 Cir., 1938, 98 F.2d 150, 153."

The credible evidence establishes that the plaintiffs have invented a new and useful product, within the meaning of the statute and the authorities, and that the defendant has been and is infringing the plaintiffs' patent.

The plaintiffs are entitled to the following relief:

1. A determination that the plaintiffs' patent was and is valid and infringed by the defendant and granting the injunction sought by the plaintiffs, and directing that the action shall be referred to a Special Master for assessment of damages.

2. Dismissal of the defendant's counterclaim.

3. The award of taxable costs.

Settle findings and decree on notice.