Frances P. NORMAN and Frances P. Norman d/b/a The Norman Company, a partnership consisting of Frances P. Norman and Norman Norman, Appellees,

v.

Leonard LAWRENCE, Appellant.

No. 66, Docket 26043.

United States Court of Appeals
Second Circuit.

Argued Nov. 1, 1960.

Decided Dec. 21, 1960.

Swan, Circuit Judge, dissented.

Mock & Blum, Blum, Moscovitz, Friedman & Blum, Alex Friedman, New York City, for defendant-appellant.

Kenyon & Kenyon, Ralph L. Chappell, Richard A. Huettner, New York City, for plaintiffs-appellees.

Before HAND, SWAN and MEDINA, Circuit Judges.

HAND, Circuit Judge.

This is an appeal from a judgment of Judge Bruchhausen (180 F.Supp. 186),
holding valid and infringed Claim 1 of Patent No. 2,763,999, issued to one of the plaintiffs, Frances P. Norman, for "earring pads." The disclosure was for two kinds of "pads"—the "clip-on" and the "screw-on—but we need concern ourselves only with the "clip-on" type. It was designed to provide a "clip" that would grasp an earring to the lobe of the ear and hold it firmly in place to resist entanglements in the hair, but without too much pressure on the lobe for the comfort of the wearer. There had been numerous earring "clips" before, at times using round sections of a soft rubber cylinder, and holding their position by adhesives on one or both of the two arms of a spring pressed clamp. We accept, because they are not shown to be "clearly erroneous" Judge Bruchhausen's findings of fact as follows. "The articles on the market prior to the introduction of plaintiffs' article were so-called stick-on pads, supposed to remain glued onto the rear of the earring clamp upon application of finger pressure. However, these pads would continually loosen and become caught in a user's hair. Also, on the market was a tubular rubber cot or sleeve for twisting on to the rear of the earring. The cot or sleeve was found unsatisfactory because the rubber cots or sleeves were difficult to twist on to the earring clamp and, since the clamps were not strong, would frequently break. The plaintiff, Frances P. Norman, then experimented and eventually developed her article, a flat flexible thin rubber pocket created by the dipping of two flat thin rubber pieces into a latex solution, holding the pocket intact and rendering it extremely flexible. It also developed that a sponge rubber pad could be retained on the flat side of the rubber pocket, which would not slip off or loosen from the pocket."

■■ The pads themselves were very old, but were not satisfactory for the reasons just given. The other element of the combination, the rubber "pocket" just mentioned, known as the Dorsey "boot," had appeared thirty years before the application for the patent; it was

**506**

made up of sections of a rubber tubing to be slipped over one of the clamps, quite unlike the patented circular discs of rubber about the size of the clamp on which they were to be used. Two of these were stuck together at their circumferences except for an opening between them long enough to admit the inner clamp by stretching. The plaintiffs sold their "pockets" with a pad already glued on; in the accused clip the pads and "pockets" were sold separately with instruction that a pad should be glued to the inner "pocket." The invention therefore consisted of combining a kind of "pocket" that could be easily slipped on and off the clamp, with the old pad into a single member that would hold the earring in place upon the lobe of the wearer's ear.

In spite of the fact that this combination was of the simplest sort, made of two elements that had for many years been used in the industry, no one had thought of combining them. Hence it is argued, as it always is when an invention consists of a combination of old elements, that there can be no "invention" in mere "aggregation." In the case at bar the judge has found that "the commercial success was phenomenal, and again there is no reason to hold that this finding was "clearly erroneous." The appeal therefore presents the question that so often arises as to patents: what shall be the test or standard of invention? We have just discussed this once again in the case of Reiner v. I. Leon & Co., 285 F.2d 501, handed down at the same time as this, and could only repeat what we there said. It is true that courts have again and again evinced repugnance to recognizing as patentable a trivial readjustment of existing elements into a new combination, apparently insisting that monopolies should be limited to new assemblages of old elements that are important and imposing. That disposition will no doubt continue; it is hard to attach value to a trifling modification of a gadget that has arisen on the surface of a stream of novelties because it has found immediate favor.

We can only reply that, while the standard remains what it is, we can see no escape from measuring invention in cases where all the elements of the new combination had been long available, (1) by whether the need had long existed and been desired, and (2) whether, when it was eventually contrived, it was widely exploited as a substitute for what had gone before.

Judgment affirmed.

SWAN, Circuit Judge (dissenting).

Though reluctant to disagree with my brothers on a question of patent law, I am unable to persuade myself that plaintiffs' simple combination of old elements involved "invention." See Schaefer, Inc. v. Mohawk Cabinet Co., Inc., 2 Cir., 276 F.2d 204, 207 which held that where a particular aggregation of recognized elements "merely embellishes one of the ingredient elements, it is not [patentable]."